## John Ellett *v.* Embury & Maury *et al.*

### (*Jackson.* April Term, 1919.)

1. **EQUITY.** Cross-bill in equity must be dismissed where based upon tort.

    Allegations construed to make a cross-bill one for misrepresentations made to one defendant by the agent of another defendant, making it one for fraud and deceit, of which an equity court had no jurisdiction, so that the cross-bill must be dismissed. (Post, p. —.)

    Cases cited and approved: Swift & Co. v. Warehouse Co., 128 Tenn., 82.

2. **FRAUD.** Insufficiency of evidence to prove misrepresentation.

    In a suit to collect amount which plaintiff was forced to pay as a result of defendant's failure to ship cotton to England by reason of an alleged breach of contract, evidence *held* not support a cross-bill by one defendant against another for misrepresentation by latter's agent of the right to relet the contract for shipment of cotton to another with the understanding that it was to be transported under their contract with the steamship company giving the right to ship a certain amount within a certain month. (*Post*, p. —.)

3. **APPEAL AND ERROR.** Cross-complaint should be dismissed absolutely upon cross-complainant's failure to sustain it by proof.

    Where cross-complainant with opportunity to sustain the allegations of its cross-bill by proof failed to do so, and where no reason appeared why said cross-bill should not have been dismissed absolutely, it will be so dismissed. (Post, p. —.)

4. **COSTS.** Not taxable against party not liable for anything in suit.

    Where the record discloses that one of the defendants could not be held liable for anything, it was error to tax such defendant with costs. (Post, p. —.)

5. GUARANTY. Shipping. Evidence sufficient to sustain decree against steamship company and guarantors of freight rate for excess freight paid.

Facts in evidence *held* sufficient to sustain a decree for complainant against a steamship company for excess freight paid and against other defendants on their guaranty that freight would not exceed $1.70 per hundredweight. ( *Post, p.* — )

6. SHIPPING. Agency to confirm subletting of contract of affreightment established by evidence of custom of parties.

Where the preponderance of the evidence shows that it was a custom of party soliciting freight from shippers to be forwarded to foreign ports to contract with the steamship company for the carriage of such freight, then to make or issue confirmation for reletting of such shipments to the railroad company, upon which the latter would issue through bills of lading, the steamship company cannot avoid liability on the ground that the confirmations to the railroad company for the reletting of shipment contract were issued by the soliciting company without authority. (Post, p. —.)

7. SHIPPING. Knowledge of the agent of steamship company in performance of duties is knowledge of principal.

Where a railroad company acted on its own behalf and on behalf of a steamship company in issuing export bills of lading for cotton, and it had full knowledge of the issuance of confirmation of shipments by a soliciting company when issuing such bills of lading, the railroad company's knowledge of such fact was the knowledge of the steamship company. (Post, p. —.)

Cases cited and approved: Tagg v. Tennessee Nat. Bank, 56 Tenn., 479; Bank v. Sneed, 97 Tenn., 120; Willcox v. Hines, 100 Tenn., 524; Provident, etc., Society v. Edmonds, 95 Tenn., 53; Ins. Co. v. Bank, 88 Tenn., 369; Winchester v. Winchester, 38 Tenn., 460; Odum v. Threshing Machine Co., (Tenn. Ch. App.), 36 S. W., 191.

8. SHIPPING. Estoppel of steamship company to deny obligation under bill of lading made by agent.

A steamship company was estopped from denying its obligations to carry cotton under a through export bill of lading issued by a railroad company which was its agent for such transactions, and was liable for breach of such shipment contract. (Post, p. —.)

9. **SHIPPING.** Unqualified denial of obligation under contract of affreightment waives right to invoke arbitration clause thereof.

Where a steamship company unqualifiedly denied any obligation upon its part to transport cotton at the rate fixed in a contract and refused to transport it until an additional amount was paid, it waived its right to invoke an arbitration clause of such contract. (Post, p. —.)

10. **APPEAL AND ERROR.** Party may not complain of evidence not prejudicial.

A party may not complain of the admission of testimony which was not prejudicial. (Post, p. —.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— Hon I. H. PERES, Chancellor.

HOLMES & CANALE, for appellant.

RANDOLPH & RANDOLPH, EWING, KING & KING, and SIVLEY, EVANS & McCADDEN, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by the complainant against Embury & Maury, cotton factors of the city of Memphis, J. H. W. Steele Company, foreign freight brokers and forwarders, with an office in the city of Memphis, and the Leyland Harrison Steamship Lines of the Kingdom of Great Britain, also with an office and agent in Memphis, for the purpose of collecting from said defendants the sum of $1,228.15, with interest, which amount he was forced to pay to the steamship company

as freight on 400 bales of cotton shipped from Memphis to Liverpool, England, by reason of an alleged breach of a contract which said.defendants had with complainant.

The facts out of which the suit grew are as follows: Embury & Maury, cotton factors of the city of Memphis, sold to the complainant, Ellett, 400 Bales of cotton at a stipulated price, agreeing to pay the freight for the shipment of said cotton from Memphis to Liverpool, England. The inland rate on said cotton from Memphis to New Orleans was 30 cents per hundredweight, and the ocean rate from New Orleans to Liverpool was $1.40, making the total rate from Memphis to Liverpool $1.70.

Prior to making this contract with the complainant, Embury & Maury had contracted with the defendant steamship company for the transportation of 2,000 bales of cotton from Memphis to Liverpool; the same to be shipped in the month of December, 1915.

It had been the uniform custom and practice for many years for parties having such contracts of shipment with the steamship companies, including the Leyland Harrison Steamship Lines, to relet or sublet the same to other shippers upon notifying the defendant J. H. W. Steele Company at Memphis, whom the proof shows is a foreign freight forwarding broker; that upon receiving notification of the reletting J. H. W. Steele Company would thereupon confirm the reletting to the railroad company carrying the cotton from Memphis to New Orleans, to be delivered to the steamship company. The railroad company, acting as the agent of the steamship company, would issue a through bill of lading, the same being signed by the agent of the railroad company,

binding the railroad company to carry said cotton from Memphis to New Orleans, and binding the steamship company to carry the same from New Orleans to Liverpool.

Before consummating said contract with the complainant Ellett, the defendants Embury & Maury called up J. H. W. Steele Company for the purpose of ascertaining if the 400 bales of cotton in question could be relet to complainant under their contract with the steamship company. Upon being informed by J. H. W. Steele Company that this could be done, Embury & Maury sold the cotton to complainant at a stipulated price, cost and freight to Liverpool, meaning thereby that said cotton would be delivered at Liverpool by the sellers, Embury & Maury, who had J. H. W. Steele Company to issue its confirmations for said cotton to the railroad company. Whereupon the railroad company, who, the proof shows, acting on behalf of itself and the steamship company, issued through bills of lading for said 400 bales of cotton based upon the confirmations made to it by J. H. W. Steele Company. The complainant paid to the railroad company the inland rate of 30 cents, and the ocean rate of $1.40, which amount, under the contract with Embury & Maury, he was to deduct from the invoices to be rendered to him by Embury & Maury.

The cotton was carried by the railroad company to New Orleans under said bills of lading, and upon its arrival at New Orleans the steamship company refused to receive and carry the same to Liverpool, stating as its reason therefor that Embury & Maury's contract for December shipments had already been overshipped

with cotton shipped in their own name and by others to whom reletting had been made. However, upon it being subsequently ascertained that Embury & Maury's contract had not, in fact, been overshipped, the steamship company then gave as its reason for not transporting said cotton that Embury & Maury had no right to relet the same to Ellett under their contract with the steamship company.

The steamship company demanded of the complainant the additional sum of $1,228.15 for the transportation of the cotton from New Orleans to Liverpool, which amount represented an advance in the ocean freight rate of 60 cents per hundredweight, and represented the difference between the contract rate of $1.40 and the then current rate of $2. The steamship company refused to move the cotton until this difference was paid by the complainant. He therefore paid the same under protest, and notified Embury & Maury that he would hold them liable for the guaranteed ocean rate of $1.40, and also notified the steamship company that he would hold it responsible for said difference by reason of its refusal to carry the cotton at the rate specified in the bills of lading.

Embury & Maury answered the bill, and filed a cross-bill against J. H. W. Steele Company, alleging that J. H. W. Steele Company had advised them that they could relet said 400 bales of cotton to the complainant, and that the same could be shipped under their contract, that they both relied and acted upon J. H. W. Steele Company's representation that said cotton could be shipped under their contract with the steamship company

in the name of Ellett, which representation was false and misled cross-complainants to their injury, and they sought a recovery against J. H. W. Steele Company.

The steamship company answered the bill, denying its material allegations, and also filed a cross-bill against J. H. W. Steele Company, in which it was alleged that, in the event J. H. W. Steele Company had made misrepresentations to Embury & Maury, and had wrongfully held itself out as the agent of the steamship company, whereby and on account of which a right of action had accrued against the steamship company, said company should be allowed to recover from J. H. W. Steele Company any amount for which it might be held liable by reason of any misrepresentation that the J. H. W. Steele Company may have made to Ellett and Embury & Maury.

The steamship company denied in its answer that J. H. W. Steele Company had authority to confirm the reletting of said cotton to the railroad company, and denied that the railroad company had authority to issue a through bill of lading binding the steamship company to receive the cotton under such reletting contract and transport it to Liverpool. In short, the steamship company denied that J. H. W. Steele Company was in any sense its agent or had the right to bind it by confirmations issued to the railroad company.

Upon the hearing the chancellor gave the complainant a decree against both Embury & Maury and the steamship company for the amount of the freight which he was forced to pay to the steamship company in excess of the contract rate at which the cotton was to be

transported from Memphis to Liverpool. He also decreed a recovery for said amount in favor of Embury &. Maury under their cross-bill against J. H. W. Steele Company. He decree that J. H. W. Steele Company was not liable to complainant on account of the alleged excess freight collected by the steamhsip company, from which holding the complainant, Ellett, did not appeal. He dismissed the steamship company's cross-bill against J. H. W. Steele Company without prejudice, holding that the proof failed to show liability on behalf of the Steele Company. The steamship company did not appeal from this holding, but J. H. W. Steele Company did appeal from that part of the decree dismissing the steamship company's cross-bill without prejudice, and makes the insistence in this court that the cross-bill of the steamship company should have been dismissed outright, because the court was without jurisdiction of the subject-matter, and further because the evidence did not support the allegations of the cross-bill.

The steamship company prayed, was granted, and perfected an appeal from the decree rendered against it, and Embury & Maury likewise appealed from the decree rendered against them; both decrees being in favor of the complainant, Ellett, as before stated. Errors have been assigned by the parties respectively.

We will first consider the errors assigned by J. H. W. Steele Company. It is insisted by that company that the chancellor erred in rendering a decree against it in favor of Embury & Maury: (1) Because, under the allegations of the cross-bill of Embury & Maury, the court had no jurisdiction of the subject-matter upon

which a recovery was decreed; and (2) that in no event did the proof introduced by Embury & Maury under said cross-bill warrant a recovery against J. H. W. Steele Company.

In their cross-bill filed against J. H. W. Steele Company, Embury & Maury alleged that when they sold the 400 bales of cotton to the complainant, Ellett, they called over the telephone A. C. Hutchinson, the agent and representative of J. H. W. Steele Company, and asked him if they had the right to relet to Ellett shipping privileges under their contract with the steamship company, and were informed by Hutchinson that the cotton could be shipped in the name of Ellett under said contract stating that there could be no possible objection by the steamship company. The cross-bill alleges that cross-complainant, relying upon the statements made by the agent of J. H. W. Steele Company, and believing the same to be true, closed the contract with Ellett for the sale of the cotton, and granted to him the right to ship it in his own name under their contract with the steamship company.

We think that from these allegations it is apparent that the cause of action alleged in the cross-bill of Embury & Maury against J. H. W. Steele Company is for misrepresentations made to them by the agent of that company. This being true, the action by Embury & Maury is one for fraud and deceit; in other words, said action is based upon a tort, of which a court of equity has no jurisdiction. *Swift & Co.* v. *Warehouse Co.*, 128 Tenn., 82, 158 S. W. 480.

We are of the opinion that Embury & Maury are not entitled to recover against J. H. W. Steele Company for the second reason set out in its assignment of error. There was no evidence introduced under the cross-bill upon which a recovery against J. H. W. Steele Company could be predicated. The cross-bill does not allege that J. H. W. Steele Company is liable by reason of the issuance by it of the confirmations for the reletting of said cotton to the railroad company, who was the agent of the steamship company. The evidence shows that the representation made by the J. H. W. Steele Company to Embury & Maury that the cotton could be relet to Ellett under their contract with the steamship company and could be shipped under said contract was based upon the custom and course of dealing which had theretofore existed between shippers of cotton and the steamship company. The evidence overwhelmingly shows that up to the time of the shipment involved in the present litigation the steamship company had invariably and without question accepted and carried cotton which had been relet in the same manner that the cotton in question had been relet. The evidence shows that this had been the custom of the steamship company for many years, and that it had universally shipped such cotton under confirmations made or issued by J. H. W. Steele Company to the railroad company, who acted as its agent in issuing bills of lading therefor. This had been done many times by the steamship company, and the J. H. W. Steele Company was not informed and had no notice of a different course of dealing by the steamship company with cotton shippers in the city of Memphis.

That company was, therefore, we think, justified in the belief that Embury & Maury had the right to relet the cotton to Ellett with the understanding that it was to be transported under their contract with the steamship company giving them the right to ship 2,000 bales during the month of December.

. It is next insisted by J. H. W. Steele Company that the chancellor erred in dismissing the cross-bill filed against it by the steamship company without prejudice. It is insisted that said cross-bill should have been dismissed absolutely; there being no proof upon which it could be sustained.

: We think this assignment of error is also well taken. Cross-complainant had been given an opportunity to sustain the allegations of its cross-bill by proof, and having failed to do so, and no reason appearing why said cross-bill should not have been dismissed absolutely, we think cross-defendant was entitled to have it so dismissed.

We are of the opinion that the chancellor erred in taxing J. H. W. Steele Company with any part of the costs of the cause, for the reason that from the record disclosures it could not be held liable for anything. It follows, therefore, as a matter of course, that it should not have been burdened with costs.

We are of the opinion that there is no error in the decree of the chancellor rendered against Embury & Maury and the steamship company for the excess freight which the complainant, Ellett, had to pay upon the shipment. Embury & Maury are clearly liable to the complainant under their guaranty that the freight would not exceed $1.70 per hundredweight.

The steamship company undertakes to avoid liability upon the ground that the confirmations to the railroad company for the reletting of said cotton were issued by J. H. W. Steele Company, who was without authority to make or issue such confirmations. It is further insisted by the steamship company that the railroad company was likewise without authority to issue to the complainant, Ellett, through bills of lading for the cotton. It is insisted by the steamship company that, under contracts between it and shippers, confirmations for reletting cotton could only be made with its written consent, and that this was true of the cotton shipped by the complainant, Ellett.

This contention is not sustained by the proof. It is true that the form of contracts used by the steamship company in stipulating for the shipment of cotton to foreign ports contains the following:

"This contract is for freight room required only by shipper named herein, and no portion of it can be relet or transferred, without the written consent of Leyland Harrison Lines."

The overwhelming proof shows, however, that this stipulation was not observed and enforced by the steamship company, but that it had been its custom for many years to ship cotton which had been relet under circumstances similar to those under which the cotton in question had been relet, without any question being made as to the right of the shipper to have it transported over its lines. The evidence shows also that it had invariably shipped cotton under confirmations which had been made to its agent, the railroad company, by J. H. W. Steele

Company. This had been the course of dealing of the steamship company for many years with cotton shippers at Memphis, and with J. H. W. Steele Company. The evidence shows that J. H. W. Steele Company, who solicited from the shippers freight to be forwarded to foreign ports, would contract with the defendant steamship company for the carriage of said freight, and would then make or issue confirmations for such freight to the railroad company, and upon such confirmations the railroad company would issue to the shipper through bills of lading for the movement of such freight.

Indeed, the great preponderance of the evidence shows that the transaction involved was not an extraordinary one, but was a usual and ordinary transaction with the steamship company and its agents. So universal was the custom of the steamship lines to transport cotton that had been relet and confirmed by J. H. W. Steele Company, the shippers of Memphis never questioned the Steele Company's authority to make these confirmations, and the steamship company nor the railroad company had never questioned it, so far as the record shows, until the shipment involved was made.

It is insisted, however, by the Steamship Company that it had no knowledge of the issuance of the confirmations for the cotton in question by the Steele Company, and that such confirmations could have only been issued upon its express authority.

As before stated, the evidence shows that the railroad company, in issuing the through bills of lading, not only acted in its own behalf, but also in behalf of the steamship company. The bill of lading, under which the cot-

ton moved, was headed ''Export Cotton Bill of Lading,'' and was executed on behalf of the steamship company and the railroad company by the agent of the latter company. It contained the following attestation clause:

''In witness whereof the agent signing on behalf of the said ——— Railroad Company, and of the said Ocean Steamship Company, or ocean steamer and her owner, severally and not jointly have confirmed to one original bill of lading of this tenure and date.

''———, Agent.''

The proof is clear that the railroad company had full knowledge of the issuance of the confirmations by the Steele Company when it issued the through bill of lading for the cotton in question. This being true, the railroad company's knowledge of such fact was knowledge to the steamship company. *Tagg* v. *Tennessee National Bank,* 9 Heisk., 479; *Bank* v. *Sneed,* 97 Tenn., 120, 36 S. W., 716, 34 L. R. A., 274, 56 Am. St. Rep., 788; *Wilcox* v. *Hines,* 100 Tenn., 524, 45 S. W., 781, 66 Am. St. Rep., 761; *Provident, etc., Society* v. *Edmonds,* 95 Tenn., 53, 31 S. W., 168; *Insurance Co.* v. *Bank,* 88 Tenn., 369, 12 S. W., 915; *Winchester* v. *Winchester,* 1 Head, 460; *Odum* v. *Thrashing Machine Co.* (Tenn. Ch. App.), 36 S. W., 191.

We think, in view of the facts set out, that the chancellor was correct in holding that the steamship company was estopped from denying its obligation to carry the cotton under said bill of lading, and that it was liable to the complainant for its breach of said contract.

It is next insisted that the complainant cannot recover of the steamship company, because the contract under

which the shipment was made required that all disputes arising thereunder· should be submitted to arbitration in accordance with the provisions of the contract provided therefor.

It is a sufficient answer to this assignment to say that the steamship company unqualifiedly denied any obligation upon its part to transport the cotton at the rate fixed in the contract, and refused to transport it unless an additional amount was paid. This being true, it waived its right to invoke the arbitration clause of the contract.

There are a number of assignments made by the steamship company upon the action of the chancellor in admitting over its objection, certain testimony.

These assignments become immaterial in our view of the cause. They are in no way controlling. The steamship company was not prejudiced by the admission of the testimony complained of. We clearly think, in view of all the evidence, that complainant is estopped from relying upon its principal defense, which is, as before stated, that it was not bound by the contract of carriage, because the same was executed without its authority.

It results that the decree against Embury & Maury and Leland Harrison Steamship Lines in favor of complainant will be affirmed. The decree against J. H. W. Steele Company in favor of Embury & Maury under their cross-bill is reversed, and the cross-bill is dismissed. The decree dismissing the cross-bill of the Steamship Company against J H. W. Steele Company "without prejudice" is also reversed, and the cross-bill of the steamship company is dismissed absolutely.

Ellett v. Embury & Maury.

Embury & Maury will be taxed with the costs incident to the filing of the cross-bill against J. H. W. Steele Company. The steamship company will be taxed with the costs incident to the filing of its cross-bill against J. H. W. Steele Company. The remainder of the costs of the cause both in this court and in the court below will be taxed against both the steamship company and Embury & Maury.