HURST BOILLIN Co. *v.* S. S. JONES *et al.**

W. A. CHAMBERS Co. *v.* S. S. JONES & Co. *et al.*

(*Nashville.* December Term, 1925.)

1. **PRINCIPAL AND AGENT.** Generally, principal is affected with constructive knowledge of material facts of which his agent receives notice while acting in course of employment and scope of authority.

   Generally, a principal is affected with constructive knowledge of all material facts of which his agent receives notice or acquires knowledge in the course of his employment and within the scope of his authority, notwithstanding agent's failure to communicate the facts to the principal. (*Post, pp.* 540-543.)

   Cases cited and approved: Jenkins Bros. Shoe Co. v. Renfrow, etc., Co., 151 N. C., 323; Eng. v. Cammann, 85 Misc. Rep., 27; Union Bank v. Campbell, 23 Tenn., 395; Myers v. Ross, 40 Tenn., 60; Tagg v. Bank, 56 Tenn., 479; Insurance Co. v. National Bank, 88 Tenn., 369; Bank v. Sneed, 97 Tenn., 132; Willcox v. Hines, 100 Tenn., 532; Ellett v. Embury & Maury, 142 Tenn., 444; Hale v. Sovereign Camp W. O. W., 143 Tenn., 555.

   Cases cited and distinguished: Trenton v. Pothen, 46 Minn., 298; Westinghouse Electric, etc., Co. v. Hubert, 175 Mich., 568.

2. **PRINCIPAL AND AGENT.** Notice received by salesman, but not communicated to principal, of dissolution of partnership subsequent to which goods were sold, bound principal.

   Where salesman in opening new account was required to report as to the responsibility of customer, it was his duty to report to the principal notice received by him of dissolution of partnership by sale of one partner's interest to the other, and principal was bound

---

*Notice to traveling salesman, as notice to his employer, see note in 25 L. R. A. (N. S.), 231.

Hurst Boillin Co. v. Jones.

by such notice, even though the salesman received notice before goods were sold, to surviving partner and while he was not engaged in principal's business.    (*Post, p.* 543.)

Case cited and approved: Neal v. Smith, 116 F., 20.

*Headnotes 1. Agency, 2 C. J., Section 542; 2. Agency, 2 C. J., Section 544 (Anno).

FROM HOUSTON.

Error to the Chancery Court of Houston County.— Hon. J. W. Stout, Chancellor.

Peay & Goodlett and H. N. Leech, for plaintiffs in error.

J. M. Spencer and P. S. Thompson, for defendants in error.

Mr. Justice McKinney delivered the opinion of the Court.

These causes were consolidated for hearing and involve the same questions.

The respective complainants are wholesale merchants, and, in their bills, seek decrees for goods sold and delivered to the defendants subsequent to October 1, 1917.

The defendants are S. S. Jones and P. S. Thompson, who formed a partnership in May, 1917, for the purpose of conducting a retail mercantile business under the name of S. S. Jones & Co.

From the formation of the partnership until March, 1918, S. S. Jones & Co., was a regular customer of complainants, and paid for all goods purchased prior to November 1, 1918.

The controversy is as to the liability of Thompson for goods purchased after that date, his defense being that about October 1, 1917, the partnership was dissolved and he retired from the business, and that notice of the dissolution was given at the time to Crockarell, traveling salesman for Hurst Boillin Company, and to Ely, who occupied the same position with Chambers Company. It was through these salesmen that the complainants sold goods to Jones & Co. both prior and subsequent to the date of the alleged dissolution.

It is conceded that these causes must be considered upon the theory that such notices were given, and that the goods sued for were sold and delivered after the notices were given, since these facts were directly established by the verdict of the jury.

Upon the question of notice S. S. Jones testified as follows:

"Q. Did you ever notify or hear any one else notify W. A. Chambers Company of this dissolution?

"A. Yes, sir; a few days after the dissolution was affirmed, Mr. Thompson happened to be back up the Ridge. He and Mr. Buchanan was setting over on one side of the house talking, and I was on the other side of the house. Mr. Ely came in with a candy deal as he called it and approached Mr. Thompson to sell him a deal of candy. Mr. Thompson told him that he was out of the grocery business and that he would have to see Jones to sell the candy.

"Q. State whether or not Thompson told Mr. Ely if he had sold out to you, that you all had dissolved partnership, and that he had nothing more to do with the grocery business?

"A. I don't remember just the words he used, only he told him that he had sold out and was not in the grocery business any more.

"Q. What did Mr. Ely say in response to this?

"A. I think he asked who was doing the buying. I think Mr. Buchanan answered him by telling him that I was doing the buying.

"Q. Did he come to where you were, then ask you about buying the candy deal?

"A. I think he called me over there to where he was.

"Q. That occurred in your store building at Tennessee Ridge in the presence of P. S. Thompson, A. J. Buchanan, Mr. Ely, and yourself? Was there any one else present?

"A. I don't believe there was.

"Q. Did you ever notify Hurst Boillin Company or their agent of this dissolution?

"A. Yes, sir.

"Q. State who and when you notified them?

"A. Just a few days after the dissolution. Mr. Crockarell came into the store, I had then employed Mr. McCoy as clerk. I introduced him to Mr. McCoy, bought a little goods from him, and took him into the side room then to have a little talk with him. I told him that I had bought a sawmill, was trying to get it started, was going to cost me a right smart little bit of money to get it into operation, and that I had also bought Mr. Thompson's interest in the grocery, and asked him if he could

hold up on his bills, and he told me that it would be all right.

"Q. You notified him then that you and Thompson had dissolved, Thompson had nothing to do with the grocery business, but you owned the entire interest?

"A. Yes, sir."

Upon the question of the authority and duty of these salesmen we quote from the testimony of complainants' witnesses as follows:

Boillin, in charge of the Hurst Boillin Company, when questioned as to the authority and duty of salesman Crockarell, said:

"We required them to report to the house the responsibility in their opinion of the firms that we are opening an account with, and they also have authority to collect on the account, as well as sell goods."

Harrison, assistant general manager of the Hurst Boillin Company, testified that Crockarell only had authority to take orders subject to the approval of the company.

Smith, credit man for Chambers Company, testified, with respect to Ely's authority and duty, as follows:

"We require that a salesman make out a report and turn it in with the first order, and we investigate, and if we find it satisfactory, we fill the order."

It will be noted that these witnesses testified that it was the duty of their salesmen, in opening a new account, to report as to the responsibility of the customer.

Accepting the testimony set out herein, as we are bound to do under the jury's findings, it appears that after the dissolution of the partnership, and before the accounts sued on herein were made, these traveling salesmen went

to these parties to sell them goods, as was their duty, and were told that the partnership had been dissolved, Thompson retiring, and they thereafter sold goods to Jones without disclosing to their principals this change in the partnership. This was the opening of a new account, or doing business with a new customer, and, according to their instructions, it was their duty to report these facts to their principals.

It thus appears that this information was received by these salesmen while acting in the course of their employment and within the scope of their authority.

The general rule as to imputed notice is thus stated in 2 Corpus Juris, 859:

"Subject to the qualifications hereafter considered, it it is a well-settled general rule that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof."

The rule is thus stated by Mr. Mechem, in his work on Agency (2d Ed.), section 1813, p. 1397:

"The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it: Provided, however, that such notice or knowledge

will not be imputed: (1) Where it is such as it is the agent's duty not to disclose; (2) where the agent's relations to the subject-matter are so adverse as to practically destroy the relation of agency; and (3) where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal.''

In the leading case of *Trentor* v. *Pothen,* 46 Minn., 298, 49 N. W., 129, 24 Am. St. Rep., 225, the court said:

''The rule which imputes to the principal the knowledge possessed by the agent applies only to cases where the knowledge is possessed by an agent within the scope of whose authority the subject-matter lies; in other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects. The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal. As it is the rule that whether the principal is bound by contracts entered into by the agent depends upon the nature and extent of the agency, so does the effect upon the principal of notice to the agent depend upon the same conditions. Hence, in order to determine whether the knowledge of the agent should be imputed to the principal, it becomes of primary importance to ascertain the exact scope and extent of the agency.''

In *Westinghouse Electric, etc., Co.* v. *Hubert,* 175 Mich., 568, 141 N. W. 600, Ann. Cas. 1915A, 1103, the court held that information acquired by the salesman, as to the dissolution, was acquired by him in the course, and within the scope, of his agency, and was imputable to his prin-

cipal, upon the following undisputed testimony of the salesman:

"My custom when selling goods, as to finding out the credit standing of the customer, is to get what facts I can learn and refer them to the credit department of the Westinghouse Electric & Manufacturing Company, to which all such matters are referred."

In *Jenkins Bros. Shoe Co.* v. *Renfrow, etc., Co.*, 151 N. C., 323, 66 S. E., 212, 25 L. R. A. (N. S.), 231, it was held that notice of the dissolution of a partnership to a traveling salesman is notice to his principal, where the salesman was the sole representative of the principal dealing with the firm, and the firm made all its purchases through him, and the salesman reported references given by new customers and reported dissolutions of partnership, and sometimes received payments of bills due, although not instructed to collect bills, and in a general way inquired about the condition of the business of those with whom he was dealing for his principal.

And in *Eng* v. *Cammann*, 85 Misc. Rep., 27, 147 N. Y. S., 23, it was held that where a customer who traded at the branch office of a brokerage firm gave the manager a letter authorizing him to buy and sell for her account and the firm acquiesced in the arrangement, notice to the manager of the revocation of his authority was notice binding on the firm.

This rule finds expression in several decisions of this court, to-wit: *Union Bank* v. *Campbell*, 4 Humph., 395; *Meyers* v. *Ross*, 3 Head, 60; *Tagg* v. *Bank*, 9 Heisk., 479; *Insurance Co.* v. *National Bank*, 88 Tenn., 369, 12 S. W., 915; *Bank* v. *Sneed*, 97 Tenn., 132, 36 S. W., 716, 34 L. R. A., 274, 56 Am. St. Rep., 788; *Willcox* v. *Hines*, 100

Tenn., 532, 45 S. W., 781, 66 Am. St. Rep., 761; *Ellett v. Embury & Maury*, 142 Tenn., 444, 217 S. W., 818; *Hale v. Sovereign Camp W. O. W.*, 143 Tenn., 555, 226 S. W., 1045.

These cases also announce the rule that even though the agent receives the information while acting for himself, he is bound to communicate such information when it becomes his duty afterwards to act in his agency in reference to the very transaction about which he obtained knowledge that would affect his principal.

Hence, even though these salesmen received notices of the dissolution before the goods sued for were sold, and while acting for themselves, it was their duty, when subsequently selling goods to Jones, to communicate such knowledge to their principals, and their principals are bound as fully as if the communications had been actually made.

The case of *Neal v. Smith*, 116 F., 20, 54 C. C. A., 226, relied on by complainants, does not conflict with our holding. In that case the sole duty of the salesman was to take orders and submit them to his employer for acceptance or rejection.

The bills in these causes were dismissed by the chancellor, and, upon appeal, his decree was affirmed by the court of appeals.

The petitions for writ of *certiorari* will be denied.