IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2024 Session

**KEETLY MARC v. JASON ECK, D.O.**

**Appeal from the Circuit Court for Hamilton County**
**No. 22-C-380     John B. Bennett, Judge**

---

**No. E2023-01643-COA-R3-CV**

---

This appeal concerns the discovery rule. Dr. Jason C. Eck, D.O. ("Defendant") performed spinal surgery on Keetly Marc ("Plaintiff"). On November 10, 2020, Plaintiff's counsel, who then was representing Plaintiff only in a workers' compensation case, received information through discovery reflecting that Plaintiff's surgery was performed at the wrong level. Counsel reviewed the material on November 30, 2020, and informed Plaintiff by December 4, 2020. On November 24, 2021, Plaintiff sent pre-suit notice. On March 30, 2022, Plaintiff sued Defendant in the Circuit Court for Hamilton County ("the Trial Court") alleging health care liability. Defendant filed a motion for summary judgment asserting the statute of limitations. The Trial Court granted summary judgment to Defendant. Plaintiff appeals. We hold that Plaintiff cannot be charged with constructive notice based on her attorney's November 10, 2020, receipt of the relevant information because counsel was then representing Plaintiff only in a workers' compensation case, and a potential health care liability claim was beyond the scope of her representation. Thus, the knowledge obtained by Plaintiff's counsel on November 10, 2020, may not be imputed to Plaintiff. Plaintiff was made aware of the relevant information at some point from November 30, 2020, through December 4, 2020, meaning her lawsuit against Defendant was timely filed. We reverse the Trial Court's judgment and remand for this case to proceed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Carmen Y. Ware, Chattanooga, Tennessee, for the appellant, Keetly Marc.

H. Dean Clements and Brie Allaman Stewart, Chattanooga, Tennessee, for the appellee, Jason C. Eck, D.O.

# OPINION

## Background

On August 2, 2019, Plaintiff underwent spinal surgery performed by Defendant. On November 10, 2020, as part of discovery in Plaintiff's workers' compensation case, Plaintiff's counsel received eight emails containing medical records. One document was a note from an office visit Plaintiff had with Nurse Rebecca Payne on September 9, 2019. The note stated, in part: "Will ask Dr. Jolley to review case. It appears that the planned and documented surgery was for L3-4, but on the updated Lumbar Spine MRI the postsurgical hemilaminectomy defect is at Right L2-3." Other documents likewise indicated a potential problem with the surgery. On November 30, 2020, Plaintiff's counsel reviewed the relevant materials.[1] By December 4, 2020, Plaintiff's counsel had informed Plaintiff that Defendant may have performed surgery at the wrong level.

On November 24, 2021, Plaintiff sent Defendant notice of her intent to sue. On March 30, 2022, Plaintiff sued Defendant in the Trial Court alleging health care liability. Plaintiff later filed an amended complaint. In her amended complaint, Plaintiff alleged, in part:

> 7. Further retrospective review of the records reveal that [Plaintiff] followed up at Southeastern Spine on September 09, 2019 for her scheduled visit with [Defendant]. She was seen by Rebecca Payne, Nurse Practitioner. Nurse Payne documented a plan to ask Dr. Jolley to review the case because the planned and documented surgery was for L3-L4 but on the updated MRI the post surgical hemilaminectomy defect is at the L2-L3. [Plaintiff] was not informed of the discrepancy at this time.
> 8. Additional retrospective review of [Plaintiff's] medical record dated September 30, 2019 reveals that [Plaintiff] saw Dr. Jolley on September 30, 2019 to discuss a planned Epidural steroid injection at L3-L4. At this time, Dr. Jolley's assessment included that [Plaintiff] was S/P (status post) right L2-3 post decompression with empty facet sign. The record also reports that [Plaintiff] was S/P right L3-L4 microdiscectomy on 08/2/19 by [Defendant].
> 9. [Plaintiff] continued to treat at Southeastern Spine and Neuro Surgery for ongoing and increasing back and leg pain and disability. She also had consultations with other providers after the surgery where the MRI was reviewed and/or the results were provided. However, no medical

---

[1] Incidentally, Plaintiff's counsel also had been a nurse.

provider informed [Plaintiff] or provided [Plaintiff] with information that her surgery was performed at L2-L3 instead of L3-4.

10. [Plaintiff], a lay person without any medical training, did not and could not reasonably have become aware of the possibility that [Defendant] may have performed spinal surgery at the wrong level until on or about December 04, 2020 after an exchange of voluminous medical records and subsequent discussion of the information between the parties' representatives on November 30, 2020 in preparation for mediation of disputed issues related to the workers' compensation claim.

***

15. Defendant deviated from the applicable standard of practice or care by failing to provide information sufficient to allow [Plaintiff] to make an informed decision about the surgery and other treatment options; failing to perform the surgery at the proper and consented to level of L3-L4, negating consent and resulting in medical battery; failing to inform [Plaintiff] of the performance of the surgery at the wrong level; immediately leaving town after the improper surgery without informing [Plaintiff] or Dr. Jolley of the surgery done at the wrong level and fraudulently documenting that the surgery was done at the proper level, resulting in fraudulent concealment, obstruction of evidence, evasion of liability and medical abandonment of care; and ongoing failure to notify [Plaintiff] of the improper and un-necessary surgery, resulting in ongoing fraudulent concealment. Alternately and/or additionally, the defendant failed to notify [Plaintiff] pre-operatively of his intent to leave town immediately after her surgery, resulting in lack of informed consent, fraudulent concealment, and abandonment of care.

In October 2022, Defendant filed a motion for summary judgment raising the statute of limitations. In his supporting brief, Defendant stated, in part:

Plaintiff's claim against Defendant is barred by the applicable statute of limitations contained in T.C.A. § 29-26-116. Specifically, Plaintiff and/or her attorney had in their possession information, as of November 10, 2020, sufficient to put a reasonable person on notice of the need to investigate a potential claim against Defendant. Although Plaintiff will likely to rely on the fact that neither she [nor] her attorney actually reviewed the medical records they had in their possession on November 10, 2020 until a later date, she does not dispute that those records alerted her of her possible claim against Defendant. Plaintiff then waited more than one year to send a Notice of Intent to Defendant on or about November 24, 2021 pursuant to T.C.A. §

-3-

29-26-121. Her claim is not timely filed, and is subject to dismissal at this time.

\*\*\*

Although Plaintiff states in her written discovery responses that her attorney did not review the records referenced herein until "on or about November 30, 2020," this is [sic] does not matter for purposes of determining when the applicable statute of limitations began to run. Instead, the Tennessee Court of Appeals has held that "it is immaterial that [claimants] delayed their examination of" the records which alerted them to their claim. Instead, it was the date when the information at issue was "in their possession" or "at their disposal" and capable of review that the applicable statute of limitations began to run. The Court of Appeals in Robinson[v. Baptist Mem'l Hosp., 464 S.W.3d 599 (Tenn. Ct. App. 2014)] affirmed the trial court's dismissal of the claim, which based, in part, on the rejection of the claimant's counsel's argument that they had not reviewed medical records until a date after the claimant's counsel had them in their possession. Plaintiff has admitted that the records were in the possession of her attorney on November 10, 2020. They could have been reviewed on that date, and it is November 10, 2020 that the applicable statute of limitations began to run.

(Internal footnotes omitted).

In September 2023, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. In her response, Plaintiff argued, in part:

The case at hand is nothing like Robinson. The surgery forming the basis of the injurious event resulting in this action occurred on August 02, 2019. [Plaintiff], through the exercise of due diligence in attempting to resolve issues that had arisen concerning her workers' compensation claim, first became aware of the possibility of an issue with her surgery on or about December 01, 2020 - December 04, 2020 after her attorney completed a review on November 30, 2020 of *voluminous* medical records of multiple providers received from the attorney for the workers' compensation employer/insurer on November 10, 2020. These records were provided to assist in the mediation of benefit issues related to the workers' compensation claim. There was no pending healthcare liability action or any knowledge or suspicion of any medical malpractice or negligence. During continuation of the review of the voluminous records received from the workers' comp attorney for the employer/carrier on November 10, 2020, it was discovered

-4-

on November 30, 2020 that certain records of Southeastern Spine indicated the possibility of surgical level concerns versus spinal sacralization. It was not until February 10, 2021, after [Plaintiff] made a direct inquiry to Nurse Payne, that [Plaintiff] received facts *sufficient* to reasonably put her, a lay person, on notice that she had not received the surgery that [Defendant] indicated was needed and performed.

In October 2023, following a hearing, the Trial Court entered an order granting Defendant's motion for summary judgment. The Trial Court stated, in part:

> The parties do not dispute that Plaintiff's Counsel, Carmen Ware, in a workers' compensation claim received eight (8) attachments of voluminous medical records on November 10, 2020. At the time of the receipt and review of Plaintiff's medical records, Ms. Ware's representation was limited to and in the context of [Plaintiff's] workers' compensation claim for benefits. There was no knowledge, allegations, or claims of any acts of medical malpractice or negligence. Attorney Ware reviewed the records on November 30, 2020. Based on her review of the subject medical records, Attorney Ware notified [Plaintiff] between November 30, 2020 and December 04, 2020 that [Defendant] may have performed surgery at the wrong level. Notice of Intent to Sue was provided to the defendant on November 24, 2021. The above styled action was filed on March 30, 2022.

> ***

> In the matter at hand, Plaintiff's Attorney in the workers' compensation claim had in her possession information, as of November 10, 2020, sufficient to put a reasonable person on inquiry notice of a potential claim against Defendant and to start the running of the statute of limitation. No reasonable trier of fact could come to a different conclusion under current law. Accordingly, the applicable statute of limitations expired on November 10, 2021, absent the 120-day extension pursuant to *T.C.A.* § 29-26-121(c). Because Plaintiff did not comply with *T.C.A.* § 29-26-121(a) by providing Defendant with statutory Notice of Intent to Sue within one year of Plaintiff's Counsel's receipt of the medical records on November 10, 2020, Plaintiff did not receive the benefit of a 120-day extension of time to file her Complaint. Therefore, when Plaintiff filed her Complaint on March 30, 2022, it was filed outside the applicable statute of limitations. Accordingly, the Defendant is entitled to summary judgment as a matter of law. The current state of the case law requires this result.

In making this holding, this Court acknowledges that there does not appear to be precedent which addresses the specific factual scenario in this case: the relevant information was received by an attorney who, at the time of receipt, was representing the Plaintiff in a worker's compensation claim, as opposed to an attorney representing Plaintiff in a health care liability claim or other tort action regarding the injury forming the basis of the representation, which presents a wrinkle to current case law imputing notice to the attorney's client and makes for interesting argument.  The Court also agrees that the scope of Plaintiff's counsel's representation, being limited to the workers' compensation claim only, at the time of receipt of the information at issue is also an interesting point.  However, under the current case law and facts of this case, viewing the evidence in the light most favorable to the Plaintiff and allowing all reasonable inferences for the Plaintiff, these facts are not sufficient to change the result on Defendant's Motion for Summary Judgment.

Plaintiff timely appealed to this Court.

## **Discussion**

We restate and consolidate Plaintiff's issues into the following dispositive issues: 1) whether the Trial Court erred in holding that Plaintiff could be charged with constructive or inquiry notice from November 10, 2020, when her attorney was, at that time, representing her solely on a workers' compensation claim, not a pending or even a potential health care liability claim; and 2) whether the Trial Court erred in holding that the November 10, 2020, receipt of medical records by Plaintiff's counsel was enough to put Plaintiff on constructive or inquiry notice at that date of her potential health care liability claim against Defendant.

This case was decided by summary judgment.  Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.  We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010).  In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee

-6-

Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on

hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

The discovery rule is implicated in this appeal. The Tennessee Supreme Court has explained the discovery rule as follows:

> In summary, a medical malpractice cause of action accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury. A claimant need not actually know of the commission of a wrongful action in order for the limitations period to begin, but need only be aware of facts sufficient to place a reasonable person on notice that the injury was the result of the wrongful conduct of another. If enough information exists for discovery of the wrongful act through reasonable care and diligence, then the cause of action accrues and the tolling of the limitations period ceases. Neither actual knowledge of a breach of the relevant legal standard nor diagnosis of the injury by another medical professional is a prerequisite to the accrual of a medical malpractice cause of action.

*Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010).

We first address whether the Trial Court erred in holding that Plaintiff is charged with constructive or inquiry notice from November 10, 2020, when her attorney was, at that time, representing her solely on a workers' compensation claim, not a pending or even a potential health care liability claim. Regarding the imputation of knowledge from a lawyer to her client, this Court has discussed:

> It is well settled that "[k]nowledge of facts learned by an attorney in the course of his [or her] employment will be imputed to his client." *Bellar v. Baptist Hosp., Inc.*, 559 S.W.2d [788,] 789 [(Tenn. 1978)]; *see Neilson v. Weber*, 107 Tenn. [161,] 165, 64 S.W. [20,] 21 [(Tenn. 1901)].[2] As this court has previously explained, a "person generally is held to know what his attorney knows and should communicate to him, and the fact that the attorney

---

[2] See also W.A.E., Annotation, *Imputation of Attorney's Knowledge of Facts to His Client*, 38 A.L.R. 820, 820-24 (1925); Annotation, *Imputation of Attorney's Knowledge of Facts to His Client*, 4 A.L.R. 1592, 1602 (1919) ("according to all cases, a client is chargeable with knowledge acquired by his attorney in transacting the business in which he was employed").

has not actually communicated his knowledge to the client is immaterial." *Smith v. Petkoff*, 919 S.W.2d 595, 597-98 (Tenn. Ct. App. 1995); *accord Lane-Detman, L.L.C. v. Miller & Martin*, 82 S.W.3d 284, 296 (Tenn. Ct. App. 2002). Once it has been established that the attorney obtained the relevant knowledge during the course of representing the client, "the constructive notice thereof to the client is conclusive, and cannot be rebutted by showing that the attorney did not in fact impart the information so acquired." *Smith v. Petkoff*, 919 S.W.2d at 597-98; *accord Winstead v. First Tenn. Bank N.A., Memphis*, 709 S.W.2d [627,] 632 [(Tenn. Ct. App. 1986)].

*Boote v. Shivers*, 198 S.W.3d 732, 742 (Tenn. Ct. App. 2005) (footnote in original but renumbered). We observed that the rule is well-established that "knowledge obtained by an attorney during the course and <u>in the scope</u> of his or her representation of a particular client is conclusively imputed to the client as a matter of law." *Id*. (Emphasis added).

Regarding imputation of knowledge from agent to principal, the Restatement (Third) of Agency provides:

> For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal <u>if knowledge of the fact is material to the agent's duties</u> to the principal, unless the agent
>
>> (a) acts adversely to the principal as stated in § 5.04, or
>> (b) is subject to a duty to another not to disclose the fact to the principal.

Restatement (Third) of Agency, § 5.03 (2006) (emphasis added). Additional persuasive authority comes from the Court of Appeal, Fifth District, California, which stated: "The basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the agency and <u>material to the subject matter of the agency</u>, and the agent will be presumed to have fulfilled this duty." *Triple A Mgmt. Co., Inc. v. Frisone*, 69 Cal.App.4th 520, 534-35 (1999) (emphasis added).

In *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.,* 332 F.R.D. 556 (M. D. Tenn. 2019), the District Court stated that "not all facts known by an agent are imputed to the principal." *Id*. at 569. Instead, "even if knowledge lies within the scope of an employee's duties . . . to justify imputation, the knowledge must also be *material* to the employee's duties to the employer." *Id*. at 570. "In other words, the employee's knowledge of facts may be imputed to the employer only if that knowledge is *important to the function the employee is employed to perform*." *Id*. (quoting *Huston v. Procter & Gamble Paper Prod.*

-9-

*Corp.*, 568 F.3d 100, 107 (3d Cir. 2009)). In *Jones v. Bedford Cnty.*, No. M2009-01108-COA-R3-CV, 2009 WL 4841063 (Tenn. Ct. App. Dec. 15, 2009), *perm. app. denied June 17, 2010*, this Court likewise recognized limitations to the rule of imputation: "'The facts of which the agent had notice must be within the scope of the agency, so that it becomes his duty to act upon them or communicate them to his principal. . . [I]n order to determine whether the knowledge of the agent should be imputed to the principal, it becomes of primary importance to ascertain the exact scope and extent of the agency.'" *Id*. at *4 (quoting *Hurst Boillin Co. v. S. S. Jones & Co.*, 152 Tenn. 535, 279 S.W. 392, 393 (Tenn. 1926)).

From these authorities, including our published opinion in *Boote*, imputation of knowledge from lawyer to client is not so simple as the proposition that anything a lawyer learns is imputed to her client. As we said in *Boote*, in order to impute a lawyer's knowledge to her client, that knowledge must have been obtained by the lawyer during the course <u>and</u> scope of her representation. On November 10, 2020, Plaintiff's counsel received the relevant information while representing Plaintiff in a workers' compensation matter. Counsel thus received the relevant information during the course of her representation of Plaintiff. However, that still leaves us to consider whether the information was obtained in the scope of counsel's representation.

On November 10, 2020, Plaintiff had no inkling of the information that would give rise to her health care liability action. Under principles of agency, knowledge obtained by an agent generally is imputed to the principal. Nevertheless, the scope of the agency is a relevant consideration. Not everything that a lawyer learns during the course of representing her client will fall under the scope of the representation that the lawyer was hired by the client to undertake. When such extraneous knowledge is acquired by a lawyer, it is not imputed to the client. The "course" of the lawyer's representation is not always the same as the "scope" of the lawyer's representation. If it were otherwise, this Court would not have stated that both were required to impute the knowledge to the client. The Trial Court correctly found that Plaintiff's lawyer's representation was limited only to Plaintiff's workers' compensation claim when the lawyer received the medical records. Here, there is no basis to charge Plaintiff with knowledge of a potential health care liability claim when she had retained counsel to represent her only in her workers' compensation matter. The scope of Plaintiff's counsel's representation was to represent Plaintiff in her workers' compensation matter. In sum, on November 10, 2020, Plaintiff's counsel received the relevant information during the course, but not in the scope, of her representation.[3] That will not suffice to impute Plaintiff's workers' compensation counsel's knowledge to Plaintiff.

---

[3] While many of the records obtained by Plaintiff's workers' compensation counsel undoubtedly were within the scope of the workers' compensation matter and thus properly imputable to Plaintiff, this does not extend to those records revealing a potential health care liability claim as counsel had been retained for

At some point from November 30, 2020, through December 4, 2020, Plaintiff's workers' compensation counsel informed Plaintiff that the latter's spinal surgery may have been performed at the wrong level. Only then was Plaintiff put on notice of her possible health care liability claim against Defendant. It does not matter when during that timeframe that Plaintiff received the information because, using any of those possible dates, she sent notice of her intent to sue Defendant in under one year's time, on November 24, 2021. Plaintiff thus benefited from the 120-day extension of the statute of limitations provided by statute. *See* Tenn. Code Ann. § 29-26-116; Tenn. Code Ann. § 29-26-121(c). On March 30, 2022, Plaintiff filed suit against Defendant in the Trial Court. Plaintiff's lawsuit was timely filed under the Health Care Liability Act. We, therefore, reverse the judgment of the Trial Court and remand for this case to proceed. Plaintiff's second issue is pretermitted.

## Conclusion

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Jason C. Eck, D.O.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

workers' compensation only.

-11-