The First National Bank of Wausau vs. Conway, imp.

THE FIRST NATIONAL BANK OF WAUSAU, Respondent, vs. CONWAY, imp., Appellant.

*October 19 — November 3, 1886.*

PARTNERSHIP: EVIDENCE. *(1) Case stated: Proof of membership of firm. (2) Dissolution: Formation of corporation. (3) Books as evidence. (4) Admission by one partner. (5) Partners as witnesses. (6) Order of proof.*

REMOVAL OF CAUSES. *(7) Waiver by change of venue. (8) When application for removal is too late.*

1. The firm of G. & P., at Wausau, sold to the firm of C. & M., of Chicago, an undivided one-half of a stone quarry owned by them, and

The First National Bank of Wausau vs. Conway, imp.

afterwards all of said parties obtained a lease of other lands to be used in connection with the quarry. Most of the stone from the quarry was sent to C. & M. in Chicago, and they had control of most of the sales thereof. In an action by a bank against all of said parties, upon promissory notes executed in the firm name of G. & P., and given for moneys borrowed from the bank to carry on the business of the quarry, it was admitted by C. that it was agreed between the firms of G. & P. and C. & M. that each firm should furnish one half of the means for carrying on the business, and each firm was entitled to one half of the profits. P. testified that all four persons were copartners in the business; that after the purchase of the half interest by C. & M., M. was at the quarry, and acted as boss of the works, employed and discharged laborers, and paid them by order on the firm of G. & P. The president of the plaintiff bank testified that before the loans were made G. came to the bank with C., and introduced the latter as their Chicago partner. *Held*, that the evidence warranted the jury in finding against C. that he was a partner in the firm of G. & P. and liable on the notes.

2. The formation of a corporation by the members of a firm, for the purpose of carrying on the business, is not necessarily a dissolution of the partnership for all purposes.

3. The books of account of the firm or of the corporation are not admissible as against a person having no knowledge of such books.

4. The question being as to who were the partners in a firm, statements made previous to the trial by one of the admitted partners are not admissible against one who denies that he was a member of the firm and who was not present when such statements were made. The admission of such evidence in this case, however, is *held* an immaterial error, the jury having been instructed that it could not be considered as against such disputed partner.

5. But any of the alleged partners may testify on the trial as to who constituted the firm.

6. The order of proof being in the discretion of the trial court, a judgment will not be reversed because evidence of the indebtedness of a firm was admitted before proof of the partnership.

7. After the denial of a petition for the removal of a cause from the state to a federal court, an application for a change of venue on the ground of the prejudice of the judge amounts to a waiver of the petition for removal.

8. A second petition for removal to the federal court made in the county to which the cause was sent on the change of venue, comes too late, for the cause might have been tried at the term at which the application for such change of venue was made.

APPEAL from the Circuit Court for *Winnebago* County.

The action was brought against *Richard F. Conway*, John McAdam, Adam Groth, and Hugo Peters, as members of the firm of Groth & Peters, upon promissory notes executed in the name of that firm.. The defendant *Conway* only answered. The pleadings and proceedings in the circuit court, together with the substance of the evidence given on the trial, are stated in the opinion.

In addition to the testimony of Mr. Plumer, the president of the plaintiff bank, mentioned in the opinion, he further testified that early in the summer of 1883 he had been told by Peters and Groth who the members of the firm were; that they said they had two Chicago partners named *Conway* and McAdam. This testimony was objected to as inadmissible as against *Conway*, but the objection was overruled.

The defendant *Conway* offered in evidence the books showing the accounts and transactions of the joint owners of the quarry previous to the organization of the corporation (the Northwestern Granite Company), also the stock book and the books containing the records of the proceedings of the corporation. An objection to this evidence as incompetent and immaterial was sustained.

There was a verdict for the plaintiff, and from the judgment entered thereon the defendant *Conway* appealed.

For the appellant there were briefs by *Crosby & Pink*, attorneys, and *F. J. Griffen*, of counsel, and oral argument by *Mr. Crosby* and *Mr. Griffen*. To the point that the petition for removal, when duly presented to the state court, divested that court of jurisdiction, and there could not then be a waiver, they cited *Steamship Co. v. Tugman*, 106 U. S. 118; *Ayers v. Watson*, 113 id. 594.

For the respondent there was a brief by *Silverthorn, Hurley & Ryan*, and oral argument by *Mr. Silverthorn*.

The First National Bank of Wausau vs. Conway, imp.

ORTON, J. This suit is brought to recover the amount of three promissory notes, given by the firm of Groth & Peters to the plaintiff, as follows: The first note, dated August 15, 1884, for the sum of $2,000, payable in ninety days; the second note, dated October 20, 1884, for the sum of $2,000, payable in ten days; and the third note, dated October 20, 1884, for the sum of $3,500, payable in ninety days, and the balance of a bank-account of $178.80, standing on the books of the bank against said firm. The complaint charges that in August, 1883, said firm consisted of the defendants, *Richard F. Conway*, John McAdam, Adam Groth, and Hugo Peters, and so continued during the time the said indebtedness was being contracted. The defendant *Conway* by his answer denied that he had ever been, or represented himself as being, a partner of said firm, but admitted that he and said McAdam, before the time of the first indebtedness of Groth & Peters to the bank, purchased from them as joint owners, one undivided half of the stone quarry for the working of which the money loaned by the bank was obtained, and so continued the joint and half owner thereof until they and Groth & Peters formed themselves into a corporation as hereafter noticed. It appears that in the spring of 1883 Groth & Peters owned by purchase a valuable stone quarry near the city of Wausau, and to procure money or means for the development and working of the same, and with that view, went to Chicago and applied to the firm of Conway & McAdam, who were contractors for paving streets and builders requiring the use of that kind of stone, and they purchased a half interest in said stone quarry, and afterwards a lease for other lands was made to all the four members of the firm, and thereafter most of the stone worked out of said quarry was forwarded to them in Chicago, and they had control of most of the sales thereof. This appears to be undisputed.

The main question, which is the liability of *Conway* as a

copartner with Groth & Peters in said concern and in contracting said indebtedness, is one of evidence and of fact, and the exceptions, although very numerous, are only material as they relate to this issue.

(1) A most important fact bearing upon this question is admitted in the answer, and that is that Conway & McAdam were tenants in common with Groth & Peters in the land on which the quarry was situated, by purchase from them before the indebtedness was contracted, and the lease of part of the quarry was made to all of them. It is claimed, on behalf of *Conway*, that the agreement between them was that each firm of Groth & Peters and Conway & McAdam should furnish one half of the means for carrying on said business. But even then each firm was entitled to one half of the profits of the business and equally interested in the property. This would come very near a partnership to those who did not know of their private agreement of each former firm to furnish and become solely liable for one half of the means to carry on the business. This fact, stated in the answer, comes very near an admission of the partnership.

(2) The testimony of Peters, one of the defendants, was positive that all of said four persons were copartners in that business early in the year 1883. He also testified to the following facts: That Groth & Peters sold to Conway & McAdam one half of the quarry in the spring of 1883, and that about that time Conway & McAdam visited the quarry and investigated the chances and prospects of the business of working the same, and were at that time at Wausau, and that they were again there in July of that year, and again in 1884; that McAdam was at the quarry in August, 1883, and he acted as boss of the works and helped at quarrying some two weeks, and employed and discharged laborers, and paid them by order on the firm of Groth & Peters, and sent some laborers up from Chicago, and the pay-rolls were sent to the partners in Chicago; that he was with Plumer,

the president of the bank, and that all the checks on the bank were drawn in the firm name.

(3) Plumer, the president of the bank, testified that he met McAdam in the summer of 1883, at Wausau, and that after that Groth came into the bank with *Conway* and introduced him, saying, " I wish to make you acquainted with *Mr. Conway,* our Chicago partner." This was before the $3,500 note was given, and the firm made a large loan from the bank in January, 1884.

This evidence, if believed, is conclusive that *Conway* and McAdam were partners of the firm by the name of Groth & Peters. At all events, this evidence warranted the jury in finding against the defendant on this question.

It appears that the above indebtedness grew out of a series of bank loans and overdrafts, and the notes were given to close up the account of the firm with the bank, which had been continuous from the time of the first loan. The consideration of the notes, therefore, was in most part long antecedent to the time when they were given. It appears that in December, 1883, these four persons caused themselves and their quarrying property and business to be organized into a corporation by the laws of the state of Illinois, and that at one time the bank held several shares of the stock of said corporation as collateral security on a loan made by said firm, and it is claimed that the bank had other knowledge of the formation of said corporation. It is therefore claimed that before said notes were given the bank had notice of the dissolution of said partnership. It is indisputable that the firm continued to make loans of the bank, and thereby to obtain means for the prosecution of the business, the same after the incorporation as before, and that the business at the quarry was carried on as before. It is not denied that each of the old firms was to furnish one half of the means to carry on the business as before. Groth & Peters borrowed the money and gave the notes in the name

of the firm as before, and the parties carried on the business as before. These facts constitute strong evidence that the firm continued after the incorporation, at least for the purpose of borrowing money from the bank and obtaining credit. Why were not the loans thereafter made by and in the name of the corporation? It is quite probable the bank would not have loaned money to a business corporation with limited liability of its stockholders, and therefore loaned the money to the firm, and took the stock of the corporation as collateral security. At all events, the loans were actually made to, and the notes were given by, the firm, and the only question is, Who constituted the firm? If Groth and Peters were bound, why not the Chicago members of the firm, when they all received equally the benefits of the loans. The incorporation is certainly not inconsistent with a continuance of the partnership so far as procuring money and means for the business was concerned, and the firm would still remain liable for indebtedness incurred before the corporation was formed. To be evidence of a dissolution of the partnership, to a future creditor even, it must be impossible that the partnership could be continued and co-exist with the corporation for any purpose, and it is certainly not impossible. This is sufficient on the merits of the case. We are satisfied that the evidence warranted the verdict. See *Grant v. Hardy*, 33 Wis. 675.

Exception is taken to the testimony of Plumer as to what Groth and Peters told him as to who were the partners. This evidence was inadmissible in this case, even as to Groth and Peters, because they did not contest their own liability as partners, and such evidence could only affect *Conway* and McAdam. But the defendants' counsel asked the court to instruct the jury that it could not affect the question as to *Conway* and McAdam, but only as to Groth and Peters, and the court did so instruct the jury. With such an instruction, we do not think the jury were influenced by this

evidence in the least in finding that the defendants *Conway* and McAdam were members of the partnership. The other and competent evidence was sufficient to prove that fact.

Exception was also taken to allowing Peters to testify who the partners were. In this state all persons are competent witnesses, including the parties, and their interest only goes to their credibility. We know of no reason why any of the defendants could not testify as to who were or who were not partners, or any other fact, the same as other witnesses.

The objection to proving the indebtedness before proving the partnership is only as to the order of proof, which is in the discretion of the court.

The books of account of the firm or of the corporation, if in evidence, could not have affected the rights of the plaintiff without showing that the bank had knowledge of them.

The other exceptions relate to the appellant's requests to charge the jury and to portions of the charge given by the court. These exceptions are very numerous, and it would be profitless to notice them specifically. Many of the requests are merely abstract propositions of the law of partnership. Those which were not, we think, were substantially given in the general charge, and the general charge appears to have been correct. The law relating to a partnership is not abstruse or in doubt, and we think the instructions stated the general law upon the subject correctly. We do not think there were any errors affecting the substantial justice of the case.

In this case, when pending in the circuit court of Marathon county, a petition was filed to remove the cause to the circuit court of the United States for the Western district of this state. The petition was denied, and this is alleged as an error. On the denial of the petition the defendant *Conway* made an application for a change of venue to another circuit on the ground of the prejudice of the judge,

and it was granted. In this way the defendant took affirmative action in the case and had the benefit of his application for a change of venue to another circuit. This was a waiver of his application to change the venue to the federal court. *Blackwood v. Jones*, 27 Wis. 498; *Damp v. Dane*, 29 Wis. 419; *Perkins v. Shadbolt*, 44 Wis. 574; *Kasson v. Estate of Brocker*, 47 Wis. 79; *Brooks v. Northey*, 48 Wis. 455; and *Starkweather v. Johnson*, 66 Wis. 469. After the removal of the cause to the circuit court of Winnebago county, such application was renewed on new petition and bond for removal of the cause to the circuit court of the United States for the Eastern district of this state, and was again refused. This application was clearly too late. The cause could have been tried in the circuit court of Marathon county at the term in which such first application was made. *Warner v. Penn. R. Co.* 13 Blatchf. 231; *Scott v. C. & S. R. Co.* 6 Biss. 529; *Stough v. Hatch*, 16 Blatchf. 233; *Babbitt v. Clark*, 103 U. S. 606; *Cramer v. Mack*, 12 Fed. Rep. 803.

We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.