PHILIPP LITHOGRAPHING COMPANY, Respondent, v. BABICH and others, Appellants.*

*April 29—June 1, 1965.*

* Motion for rehearing denied, with costs, on September 7, 1965.

For the appellants there was a brief and oral argument by *William R. Schnepp*, attorney, and *Royal E. Cass* of counsel, both of Milwaukee.

For the respondent there was a brief by *Petrie, Stocking, Meixner & Zeisig*, attorneys, and *James L. Stocking* of counsel, all of Milwaukee, and oral argument by *James L. Stocking*.

WILKIE, J. Appellants construe a finding of fact that the parties did business together "between the 7th day of May, 1960, and the 30th day of December, 1960," as meaning that there was only one contract, and attack this as error. But the conclusion that there was but a single contract does not logically follow from a simple recitation of the undisputed fact that the parties had dealings during that particular period of time. In addition, it is apparent from the specific reference in its decision to the "several jobs," that the trial court was aware of the individuality of the

contracts. Furthermore, even assuming that the trial court mistakenly found the existence of only one agreement, this finding does not operate to upset the judgment. This is because the present suit—for an uncontested amount of money—turns not on the number of contracts, but rather on who entered into them.

The sole issue presented on this appeal is whether the trial court erred in determining that appellants, individually, rather than House of Paul, Inc., were liable on the third contract.

It is undisputed that negotiations for the first printing contract began before the "House of Paul" was incorporated. Respondent claims that appellants continued to hold themselves out as partners during negotiations for the last contract. Appellants counter that by this time respondent had notice of the change in form of the business from a partnership to a corporation. The general rule is that partners who continue to hold themselves out as such after the formation of a corporation cannot escape responsibility for contracts entered into after the change in business status without adequate notice that the partnership has been dissolved.[1] This is especially true when the corporation operates under the same name and circumstances as the partnership.[2] The trial court found that respondent "received no actual notice of said incorporation" from appellants and that appellants "continued to deal with [respondent] as partners." These findings will not be upset unless against the great weight and clear preponderance of the evidence.[3]

---

[1] 40 Am. Jur., Partnership, p. 186, sec. 81; Anno. 89 A. L. R. 986; see also *First Nat. Bank v. Conway* (1886), 67 Wis. 210, 30 N. W. 215.

[2] Ibid.

[3] *Hope Acres, Inc., v. Harris,* ante, p. 285, 134 N. W. (2d) 462; *Klapps v. American Ins. Co.* (1965), 26 Wis. (2d) 664, 133 N. W. (2d) 248.

Appellants gave no formal notice of the alteration of the business status. Thus, if there was notice, it must necessarily have arisen from the particular circumstances in the case. It is significant that the Dun & Bradstreet report received August 19, 1960—three months after the actual incorporation—described Schnepp and Babich as partners and went on to declare that the partners "may incorporate in the near future." Respondent, through Boesel, relied on this report. Appellants question the reliability of these statements because they were conclusions of the Dun & Bradstreet reporter. But the information upon which the report was based was obtained in an interview with appellants Babich and Schnepp. If a trained investigator could not learn of the incorporation as a result of an interview with two corporate officers, the trial court could reasonably have found that such knowledge was unavailable to respondent.

In response to a demand for payment, respondent's president, Frederick Glantz, received a letter from appellant Schnepp on August 1, 1961. This letter was on "House of Paul" stationery, was signed by Schnepp in a personal rather than a corporate capacity, and explained that payments had ceased because *"we* had to put the major portion of *our* income back into stock in order to continue *our* growth." (Emphasis added.) Schnepp continued that on the basis of *"our* sales, I feel confident that *we"* can make regular payments "on *our* account and liquidate *our* debt." (Emphasis added.) The form and substance of this letter indicate that appellants were still holding themselves out as partners well after the contract was even entered into.

The payment on the first two contracts and the three part payments made on the last one were made by "House of Paul, Inc." checks. Appellants contend that this was sufficient to put respondent's officers or agents on notice that "House of Paul" had been incorporated. However,

testimony discloses that respondent's accounts receivable were handled by a bookkeeper-employee, and that the officers of the company did not see any of the checks or learn that payment was actually made by corporate check. Nor, under the circumstances, can appellants escape liability because the bookkeeper saw the corporate checks. This is because she was completely unaware of the negotiations between the parties, and could not be expected to attach any significance whatsoever to the fact that the account was paid by corporate check.[4]

We conclude, therefore, that the disputed findings of the trial court are not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

CURRIE, C. J., took no part.

---

[4] 3 Am. Jur. (2d), Agency, p. 639, sec. 276, states: "As a general rule, the knowledge of an agent may be imputed to the principal only where it is relevant to the agency and to the matters entrusted to the agent. Hence, knowledge acquired or notice received by an agent which does not pertain to the duties of the agent, which does not relate to the subject matter of the employment, or which affects matters outside the scope of his agency is not chargeable to the principal unless actually communicated to him. In other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects."

See also Restatement, 1 Agency (2d), p. 585, sec. 268, comment *c*, which states, in part, as follows: "The principal is not bound by a notification directed towards an agent whose duties or apparent duties have no connection with the subject matter to which the notification relates. It must be given to one who has, or appears to have, authority in connection with it, either to receive it, to take action upon it, or to inform the principal or some other agent who has duties in regard to it; . . ."

See *Johnson v. Associated Seed Growers, Inc.* (1942), 240 Wis. 278, 282, 3 N. W. (2d) 332.