**486**

505 P.2d 431

**ANDERSON, CLAYTON & COMPANY, INC.,**
d/b/a Paymaster Feeds, Plain-
tiff-Appellee,

v.

**Richard SWALLOWS and Calvin Justice,**
d/b/a Justice Feed Store, Defend-
ants-Appellants.

**No. 9483.**

Supreme Court of New Mexico.

Jan. 19, 1973.

---

Grantham, Spann, Sanchez & Rager, Albuquerque, for defendants-appellants.

Chavez & Cowper, Belen, for plaintiff-appellee.

OPINION

OMAN, Justice.

Plaintiff brought suit against defendants as partners to recover the unpaid balance on an open account in the amount of $5,612.03. Jurisdiction over the person of Justice was never obtained, and the case was tried on the issues raised by the complaint and the answer thereto by Swallows. The trial court found in favor of plaintiff in the amount above stated, and Swallows appealed. We affirm.

The account was opened with plaintiff's Amarillo, Texas office in 1965 by Swallows and Justice, doing business in the name of Justice Feed Store. In April

1968, their account was delinquent and Justice telephoned plaintiff's sales manager and requested that the feed on hand be picked up. Thereupon the sales manager, a sales representative and a plant manager went to Justice Feed Store and had conversations with Swallows and Justice. Swallows testified he told the three stated employees of plaintiff of a proposal to form a corporation and "that it was in the attorney's office being processed." This was denied by the sales manager. In any event, none of these three employees had any authority to extend credit and no responsibility concerning the collection or payment of accounts. This responsibility was entirely in plaintiff's credit department.

The feed was not picked up by plaintiff, and business between plaintiff and Justice Feed Store under the open account continued as usual. No one ever advised plaintiff of the formation of the corporation until in June 1970, when a check dated May 28, 1970 was returned by the bank on which it was drawn for insufficient funds, and plaintiff's credit manager then became aware of the fact that the check was written by Justice Feed Enterprises, Inc. Inquiry was made by the credit manager of the New Mexico State Corporation Commission, by which he was advised that a certificate of incorporation had issued to Justice Feed Enterprises, Inc. on May 15, 1968. Between October 2, 1969 and May 28, 1970 fourteen corporation checks had been forwarded to plaintiff and credited on the Justice Feed Store account. These and all other checks received at plaintiff's Amarillo office, which numbered about 700 to 900 per month, were handled by secretaries, except for an endorsement on the reverse side of the checks.

Swallows first contends there was no substantial evidence to support the trial court's findings that plaintiff was not notified and did not discover that Justice Feed Store was being operated by the corporation until June 1970, and that until then plaintiff continued to extend credit to de-

fendants as partners in reliance upon their individual credit. His argument is that notice to plaintiff's sales representative in April 1968 that a corporation was being formed was notice to plaintiff. There is no claim that the sales representative communicated this information to plaintiff's credit department or to anyone else in plaintiff's employ with authority to act on this information.

The sales representative continued in plaintiff's employ until September 10, 1968, and, as above stated, the corporation came into existence as of May 15, 1968. However, the sales representative never testified that he was at any time advised a corporation had been formed or had taken over the operation of the business and assumed the obligations thereof. The sales representative who serviced this account from July 1969 to date of trial on November 8, 1971, was at no time told and was never made aware of the fact that Justice Feed Store was being operated by a corporation. As heretofore indicated, plaintiff continued the account and mailed all billings in the same name at all times, and no one, and particularly Swallows, gave notice to plaintiff, or to anyone in any way connected with plaintiff, that the corporation had been formed and was operating the business. The first corporate check issued, insofar as the record reveals, was dated October 2, 1969, and this and all other corporate checks received by plaintiff were credited to the partnership account.

It is undisputed that the sales representative had no authority to extend credit, no duty or responsibility in connection with the collection of accounts, and very little knowledge of the status of accounts. Swallows cites the annotation at 43 A.L.R. 745 (1926) and he particularly relies upon the following cases cited at page 746 of the annotation: Jenkins Bros. Shoe Co. v. Renfrow & Co., 151 N.C. 323, 66 S.E. 212 (1909); Ach v. Barnes, 107 Ky. 219, 53 S. W. 293 (1899); Westinghouse Electric & Mfg. Co. v. Hubert, 175 Mich. 568, 141 N. W. 600 (1913).

In the explanatory remarks concerning the scope of the annotation it is stated:

"* * * the rule being derived from the duty of disclosure by the former [agent] to the latter [principal] of *all the material facts coming to his knowledge with reference to the subject of his agency*, and a presumption that he has discharged that duty." [Emphasis added].

As already stated, the subject of the agency in the case before us did not embrace matters of customer credit or collections on customer accounts, and the sales representatives had no responsibility in this area.

In the Jenkins case, supra, the plaintiff's salesman admitted he received notice of the dissolution of the partnership before May 15 [the goods in question were sold by plaintiff's salesman on May 27], that it was within his [the salesman's] duty to notify plaintiff when he received notice of dissolutions of partnerships who were dealing with it [plaintiff], and he [salesman] sometimes received money from customers when they offered it. The scope of the agency clearly embraced a duty on the salesman to report the dissolution of the partnership to the plaintiff. This was not a duty of the sales representative in the case before us.

In the Ach case, supra, the claim was that the notice of the dissolution of the partnership was given to plaintiffs' salesman "before the account sued for was created." On appeal from a judgment for defendant entered pursuant to a jury verdict, the extent or scope of the salesman's authority was not discussed, but reference was made to testimony to the effect that the salesman was expressly informed of the prior dissolution of the partnership and that plaintiffs would have to look to the informant and not to the partnership for payment. The decision on appeal was predicated upon the following stated principle:

"And notice to the agent in reference to or in connection with any business in which the agent is engaged by authority of the principal, and where the information is so important a fact in the transaction as to make it the duty of the agent to communicate it to the principal, is, in contemplation of law, notice to the principal, * * *."

It is impossible from the recited facts to define with any precision the scope of the agent's authority in that case. However, under the particular facts of the case, the appellate court obviously was of the opinion the information given the salesman was so important as to make it his duty to communicate it to his principal. Under the facts of the case before us, the trial court was unable and we, also, are unable to find any like duty on the plaintiff's sales representative.

In the Westinghouse case, supra, insofar as the question now before us is concerned, the Supreme Court of Michigan stated:

"In view of the testimony of the plaintiff's witness Beattys as to his duty and custom of finding out the credit standing of customers, of learning what facts he could, and referring them to the credit department of the plaintiff, to which all such matters were referred, we do not think the court erred in refusing to direct a verdict for the plaintiff, * * *."

The court stated this evidence showed that if the information as to the dissolution of the partnership was given to him—and there was a dispute in the evidence on this point—this information was acquired by him in the course, and within the scope, of his agency.

It is obvious the scope of the agency in the Westinghouse case was far broader than the scope of the agency in the case we are considering. In the Westinghouse case, the agent's duty unquestionably included the getting of information concerning the credit of customers and communicating this information to the plaintiff's credit department. No such duty was imposed on the sales representative in our case.

Swallows also relies upon Texas Co. v. Dickson, 39 N.M. 371, 47 P.2d 899 (1935); Cudahy Bros. v. West Michigan Dock & Market Corp., 285 Mich. 18, 280 N.W. 93 (1938); Distillers Distributing Company v. Young, 261 Minn. 549, 113 N.W.2d 175 (1962); Hurst Boillin Co. v. Jones, 152 Tenn. 535, 279 S.W. 392 (1926).

In the Texas Company case, supra, a partnership did not in fact exist, but the trial court made an unchallenged finding " 'That by an agreement entered into by the defendants and the agent of the Texas Company, at Brownfield, Texas, the Defendants became partners *in so far as their dealings with the Plaintiff were concerned.' "

Defendant Dickson, sent notice to plaintiff's district sales manager that he would no longer be responsible for credit extended to Beasley, Dickson's co-partner under the foregoing finding of fact. The trial court expressly found that part of the sales manager's duties were " * * *, to report to the Plaintiff any changes in firms, or the financial conditions of their various customers in his territory." Under these facts, this Court concluded the notice to the sales manager was notice to the Texas Company.

In Cudahy Bros., supra, the authority of the salesman was not detailed, but it is apparent he knowingly opened and continued the account in the wrong name, and made repeated calls on the person to whom he actually made the sales to urge payments and make collections on the account. He at no time dealt with defendant.

In the Distillers Distributing Company case, supra, it was held notice to the salesman complied with the following quoted portion of Restatement Second, Agency § 268 (1958):

" '* * * [A] notification given to an agent is notice to the principal if it is given:

" '(a) to an agent authorized to receive it; [or]

" '(b) to an agent apparently authorized to receive it.' "

The salesmen had authority to accept orders for liquor and collect payments on the orders, and were the usual vehicle of communication between plaintiffs and defendant. Obviously the salesmen had greater authority than did the sales representatives of plaintiff in the present case.

In Hurst Boillin Co., supra, the duty of the salesmen was to report to the principal as to the responsibility of the customer. They also had authority to collect on accounts, as well as sell goods.

See the following additional authorities on this question of notice: Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202 (1916); Overlock v. Hazzard, 12 Ariz. 142, 100 P. 447 (1909); Tancreti v. Mandinach, 100 N.H. 451, 129 A.2d 669 (1957); Philipp Lithographing Co. v. Babich, 27 Wis.2d 645, 135 N.W.2d 343 (1965); Oregon Cedar Products Co. v. Ramos & Kohler, 148 Cal.App. 2d 679, 307 P.2d 447 (1957); American Smelting & Refining Company v. Ridgway, 412 S.W.2d 675 (Tex.Civ.App.1967); 8 Fletcher Cyclopedia of the Law of Private Corporations § 4010 (Perm.Ed.1966); 3 Am.Jur.2d, Agency §§ 273–277 (1962); 3 C.J.S. Agency §§ 262–264 (1936).

Swallows next contends the fact that plaintiff received and credited to the account the fourteen checks, to which reference is above made and on the faces of which the corporate name was printed, placed plaintiff on notice that it was now dealing with a corporation. He relies upon Johnson v. Ryan, 43 N.M. 127, 86 P.2d 1040 (1939); Southwestern Petroleum Corporation v. Udall, 361 F.2d 650 (10th Cir. 1966); American S. Co. of New York v. Multnomah County, 171 Or. 287, 138 P. 2d 597 (1943); Annot., 148 A.L.R. 947 (1944). The Johnson, Southwestern Petroleum Corporation and American Surety Co. cases dealt with notice in entirely different contexts. They are not applicable nor persuasive under the factual situation before us or the context in which the question of notice is here presented. The annotation in 148 A.L.R. 947 deals with mis-

appropriations by fiduciaries. There is no question here presented of misappropriations or of the authority of the drawers of the corporate checks to draw said checks and forward them to plaintiff for payment on the account.

A case very similar to our present case is Conner v. Steel, Inc., 28 Colo.App. 1, 470 P.2d 71 (1970) insofar as the claim of notice by the receipt of corporate checks is concerned. In that case the court stated:

"We agree with the trial court that the mere addition of 'Inc.' to checks under the circumstances disclosed by the evidence is not sufficient, in itself, to be notice of incorporation to third parties who had been dealing with a partnership and relying on the personal liability of the partners in extending credit to the partnership."

See also Philipp Lithographing Co. v. Babich, supra; American Smelting & Refining Company v. Ridgway, supra.

■ It is next contended plaintiff failed to establish by legally admissible evidence that Swallows was indebted to plaintiff in the amount of the judgment. The first claim under this point is that the records of plaintiff received into evidence to support the amount owing was a copy of a statement of account for the period April 30, 1970, through January 4, 1971; prior to that period the account had been paid in full; and the partnership ceased to exist on May 15, 1968.

The answer to these contentions are largely disposed of above by our confirmation of the trial court's findings and conclusions that plaintiff had no notice of the cessation of the partnership and the creation of the corporation until June 1970. Further, the unrefuted evidence is that no charges for credit were made by plaintiff after June 1970, and the charges shown on the exhibit after that time reflected only paid checks returned for insufficient funds. Thus, there is no merit to these contentions.

■ Swallows next contends the exhibit was improperly admitted into evidence as a book of original entry. He relies upon § 20-2-11, N.M.S.A.1953 (Repl.Vol. 4, 1970). He urges that because the entries in the ledger [the exhibit] came from invoices which were not produced at trial, his objection to the receipt of the exhibit into evidence should have been sustained. His objection, insofar as pertinent to the present claim of error, was that they were not the "books of original entries." His claim was that the invoices alone were admissible. He relies primarily upon our decision in Pople v. Orekar, 22 N.M. 307 at 315, 161 P. 1110 (1916).

In the Orekar case it was held the trial court properly refused to admit a book of entries taken from certain charge slips, and it was stated that the offer was evidently made pursuant to the provisions of § 20-2-11, supra; no real attempt was made to comply with the provisions of this statute; and the offer was faulty for several reasons, one of which was that there was no evidence offered tending to explain " * * * why the original book of entries could not be produced." Apparently by "original book of entries" this Court meant the original charge slips.

In the present case the original invoices were not immediately available at trial, but were in Amarillo, Texas. Even assuming the correctness of this Court's appraisal in the Orekar case of what constitutes a "book of original entries" under § 20-2-11, supra, in the earlier case of McKenzie v. King, 14 N.M. 375, 93 P. 703 (1908) the wisdom of this statute was questioned. In that case this statute was held not to be exclusive and compliance therewith was accomplished if the person keeping the books was present and testified. This holding was reaffirmed in Alvarado M. & M. Co. v. Warnock, 25 N.M. 694, 187 P. 542 (1919). In the case now before us the person in charge of the records was present and testified as to their correctness.

However, it appears that the offer was made and the reception into evidence of

the exhibit permitted in the present case pursuant to the provisions of § 20–2–12, N.M.S.A.1953 (Repl. Vol. 4, 1970). This statute was enacted long after the decision in the Orekar case and has been accepted for many years as a correct rule of evidence. No express mention was made in the trial court of either §§ 20–2–11 or 20–2–12, supra, but, as already stated, the foundation for the exhibit was apparently predicated upon the requirements of § 20–2–12, supra.

■ Under his final point, Swallows contends the corporation was an indispensable party to the suit. His argument is that "All persons who have an interest in the subject and object of the action, and all persons against whom relief must be obtained to accomplish the object of the actions, are indispensable parties. * * *" He relies upon State ex rel. Reynolds v. W. S. Ranch Company, 69 N. M. 169, 364 P.2d 1036 (1961).

However, his argument does not support his contention that the corporation was an indispensable party to the present suit. This suit was to recover on an account for which plaintiff claimed the partners were alone liable. Insofar as Swallows is concerned, this claim was supported by plaintiff. If, in fact, the corporation was liable to Swallows for any portion of plaintiff's claim against him, it was his obligation to assert this claim against the corporation. In any event, the corporation was not a necessary or indispensable party to the suit filed by plaintiff and upon which it recovered judgment against Swallows. Nothing said in either C. de Baca v. Baca, 73 N.M. 387, 388 P.2d 392 (1964) or in Sellman v. Haddock, 62 N.M. 391, 310 P.2d 1045 (1957), which are cited by Swallows, suggests a different conclusion under the facts of this case.

The judgment should be affirmed.

It is so ordered.

MONTOYA and MARTINEZ, JJ., concur.