[No. 4141–II.  Division Two.  May 13, 1981.]

RODERICK TIMBER COMPANY, *Respondent,* v. WILLAPA HARBOR CEDAR PRODUCTS, INC., ET AL, *Appellants.*

*James K. Treadwell* and *Richard M. Thatcher,* for appellants.

*Harold T. Hartinger* and *Ralph E. Olson,* for respondent.

PEARSON, J.—The primary question on this appeal is whether the trial court properly disregarded the corporate entity and imposed personal liability on its three shareholders where the shareholders failed to disclose to a creditor that they were dealing for a corporation. We hold that under the facts of this case the evidence was sufficient to warrant "piercing the corporate veil." We also hold there was no error in the manner of assessing damages and affirm the judgment in all respects.

Roderick Timber Company is a Washington corporation that purchases and sells timber and logs. Its president is Phillip E. Roderick. Willapa Harbor Cedar Products, Inc.,

is a corporation duly organized in Washington in December 1976 for the purpose of operating a defunct shake and shingle mill in South Bend. Prior to incorporating, Loren Couch, Howard Wood, and Leo Brutsche had agreed to equal ownership and control of the mill. However, they were advised by a Small Business Administration loan office that to qualify for a needed SBA loan they would need to incorporate, with Couch, who had the fewest personal assets, to receive 82 percent of the stock. Wood and Brutsche were to receive 9 percent each of the stock, and were not to hold official positions in the corporation, nor be involved in its management.[1]

Following the incorporation and execution of the loan documents, the three shareholders disregarded the corporate structure to the extent of operating the mill under a side agreement in which Couch managed the mill operations, Wood purchased raw materials, and Brutsche was in charge of marketing.

In January 1977, Wood and Couch met with Phillip Roderick to negotiate the purchase of logs for the Willapa mill. Wood had previously and regularly purchased logs from Roderick for Wood's mill at Lebam. Roderick knew from his banker and from prior dealings with Wood that his credit standing was good. He did not know Couch, however, whom Wood introduced to him as foreman of the Willapa mill. All of Roderick's price negotiations were done with Wood, and the latter did not advise Roderick that the Willapa mill had been incorporated, although Wood told Roderick that he, Couch, and Brutsche had purchased the mill and were in the market to purchase timber. Payments to Roderick for logs purchased by the mill thereafter were made by corporate checks with "Inc." printed after the trade name. Roderick asserted that although his bookkeeper had seen these checks, he had not.

---

[1] The trial court emphasized this "misrepresentation" as a reason for "piercing the corporate veil." We decline to give it significance because there was no communication to plaintiff of any facts pertaining to the SBA loan.

In September 1977, Roderick telephoned Wood and told him the log account with Willapa was overdue. Wood asked him to continue sending logs to Willapa, that the account would be paid, and that his (Wood's) word was good. Three payments were thereafter made by Willapa to Roderick. Approximately $295,000 was owed on the account. According to Roderick, at a meeting later held to discuss settlement of the account, Wood nodded "yes" to an inquiry as to whether he would personally guarantee the debt. In October 1977, Roderick testified that he learned for the first time that he had been dealing with a corporation, rather than with Wood as an individual.

At trial, defendants claimed, in addition to the corporate shield defense to personal liability, that they had not received the agreed quantity of logs. To counter this defense, Roderick introduced, over defendants' objections, invoices containing quantity and scaling information showing the quantity delivered to have been accurate. Defendants objected to this testimony, claiming the scaling information was obsolete and that in the intervening period to the time of delivery the cedar would have shrunk substantially. The trial court allowed the invoices and scaling information under the Uniform Business Records as Evidence Act, RCW 5.45.

The court found and concluded that Roderick was entitled to judgment against all defendants jointly and severally for the full amount as shown by the invoices. The court's findings and conclusions reflect that personal liability was imposed because (1) the shareholders failed to disclose the existence of the corporation, and (2) the parties disregarded the corporate entity in their dealings with Roderick.

We note initially that the individual defendants make no attempt to distinguish between themselves on the question of liability, nor do they otherwise complain about the form of the judgment, except to complain about the personal liability imposed upon them. Accordingly, we will not attempt to differentiate between them nor pass upon the form of

the judgment. *Grayson v. Nordic Constr. Co.,* 92 Wn.2d 548, 599 P.2d 1271 (1979); *Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971); Harris, *Washington's Doctrine of Corporate Disregard,* 56 Wash. L. Rev. 253, 261 (1981).

As a general rule, the separate identity of a corporation distinct from its stockholders will be honored unless its recognition serves to perpetuate some form of injustice which typically involves a fraud, misrepresentation, or manipulation of the corporation to a creditor's detriment. *Truckweld Equip. Co. v. Olson,* 26 Wn. App. 638, 618 P.2d 1017 (1980). Nor will informality in the operation of a closely held corporation lead to a disregard of the corporate entity if the informality neither prejudices nor misleads the plaintiff. *Block v. Olympic Health Spa, Inc.,* 24 Wn. App. 938, 604 P.2d 1317 (1979).

The precise issue in this case is whether shareholders, who (1) have incorporated a business but nevertheless operate the business under a side partnership agreement; and (2) one of them deals with a creditor without disclosing the existence of the corporation and such dealings are in conflict with the corporate management structure, may have the benefit of the corporate shield against personal liability for the debt incurred as a result of such dealings.

We hold such conduct sufficient to warrant piercing the corporate veil where the creditor has had extensive prior dealings with the shareholder with whom he dealt and is prejudiced by his reliance upon the personal credit of that shareholder.

Under the court's findings, there is no question that for almost 10 months Roderick dealt exclusively with Wood, and to a lesser extent with Couch, as individuals in the negotiations for the purchase, sale, and delivery of logs on credit. Neither disclosed to him the existence of the corporation until the indebtedness was $295,000. Wood had substantial prior dealings with Roderick, had substantial credit standing, and on at least two occasions had indicated that he would see that the creditor was paid. These actions

demonstrated an overt intent by defendants to disregard the corporate entity. Defendants should not be able to complain when the court likewise disregarded the corporate entity to prevent prejudice to Roderick. *Harrison v. Puga, supra.* Disregard of the corporate entity is clearly evidenced by the side agreement where the shareholders were operating the business as an equal partnership. It is further evidenced by the fact that Wood, who did all the negotiations with Roderick, had no management or agency responsibilities under the corporate structure. These facts, together with the failure to disclose the corporate status to Roderick, are sufficient evidence of wrongdoing to satisfy the "piercing" rule. *Harrison v. Puga, supra.*[2]

Defendants contend, however, that Roderick did have notice that he was dealing with a corporation because Willapa made payment for the logs by use of corporate checks. In this regard, the trial court found that the checks were "routinely processed by plaintiff's office help and did not come to Mr. Roderick's attention." Specifically, Jane Brown, the company bookkeeper, accepted the corporate checks, stamped endorsements, and deposited them in the corporate account. She was not an officer of Roderick Timber Company, had no role in the purchase and sale transactions in question, and did not act for her employer in more than a ministerial capacity as servant or clerk. This is not enough to invoke the doctrine of constructive notice.

As a general rule, the knowledge of the agent will be imputed to the principal only where it is relevant to the

---

[2]We note that under the trial court's findings Wood could be held personally liable as an agent acting for an undisclosed principal. *Maxwell's Elec., Inc. v. Hegeman–Harris Co. of Canada, Ltd.,* 18 Wn. App. 358, 567 P.2d 1149 (1977). When that theory is invoked, however, the third party must elect either to hold the agent or the undisclosed principal liable for the obligation. *Maxwell's Elec., Inc. v. Hegeman–Harris Co. of Canada, Ltd., supra.* Where the undisclosed principal is a corporation, and the agent is a shareholder, the fact of nondisclosure presents substantial evidence of an intent to disregard the corporate entity for purposes of piercing the corporate veil, and if the evidence also shows an injustice to the creditors, the court is warranted in imposing personal liability on the shareholders.

agency and the matters entrusted to the agent. *Philipp Lithographing Co. v. Babich,* 27 Wis. 2d 645, 135 N.W.2d 343 (1965); Restatement (Second) of Agency § 268, comment *c* (1958).

Comment *c* at page 585 states:

> The principal is not bound by a notification directed towards an agent whose duties or apparent duties have no connection with the subject matter to which the notification relates. It must be given to one who has, or appears to have, authority in connection with it, either to receive it, to take action upon it, or to inform the principal or some other agent who has duties in regard to it . . .

The reason for this rule is that it would be unreasonable to impute knowledge to an employer from an employee who would not likely pass such knowledge along. In this case, the bookkeeper had no part in the purchase and sale negotiations between her employer and Wood. She could not be expected to attach any significance to the fact the account was paid by corporate checks. *Philipp Lithographing Co. v. Babich, supra.* The trial court found she did not notify Roderick of the manner of payment. Hence, there was neither actual nor constructive notice that Roderick was dealing with a corporation. We conclude that the trial court was warranted in piercing the corporate veil and imposing joint and several liability on the corporation and the defendants for the full amount of the debt.

Defendants also complain that the trial court should not have allowed in evidence the invoices which plaintiff sent them after each delivery of logs. The contention is that the invoices did not qualify as business records under RCW 5.45.020, since that act requires the entry on the business record be made "at or near the time of the act, condition or event". The evidence did show that the scaling results which accompanied the invoices and supported the volume had been recorded several months prior to the deliveries, and defendant's expert testified that cedar logs tend to shrink with the passage of time.

■ Although the postdelivery condition of the logs may have differed from the time the logs were originally scaled, there is no dispute that in the regular course of business at the time of scaling, plaintiff had prepared records and computer printouts containing the scaling information. The invoices plaintiff sent defendants repeated that information and satisfied the requirements of RCW 5.45.020. We find no abuse of discretion in admission of the records. *Cantrill v. American Mail Line, Ltd.,* 42 Wn.2d 590, 257 P.2d 179 (1953). Computer printouts are admissible in evidence as business records. *State v. Smith,* 16 Wn. App. 425, 558 P.2d 265 (1976). We agree with the ruling of the trial judge that the alleged discrepancy went more to the weight than to the admissibility of the exhibit.

Even assuming the trial court should have rejected the outdated scaling information, the fact remains that defendants accepted the logs and scaling information without objection. This bars their defense to payment. RCW 62A.2–606, 2–607.

Judgment affirmed.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied June 23, 1981.

Review denied by Supreme Court September 25, 1981.