No. 87-65

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

LOWELL SPRINGER, d/b/a SPRINGER
GROUP ARCHITECTS and LAND PLANNERS,

        Plaintiffs and Respondents,

   -vs-

HARRY M. OPSAHL, RAY L. INGALLS,
WALTER W. DEINES, ALAN M. HART,
and CARROLL M. HART,

        Defendants and Appellants.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sullivan, Baldassin & Mitchell; Zane K Sullivan argued,
        Missoula, Montana

    For Respondent:

        J. David Penwell argued, Bozeman, Montana

---

Submitted: September 14, 1987

Decided: October 29, 1987

Filed: OCT 29 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff-respondent, Lowell Springer, filed suit against the five named defendants to recover money alleged due under an oral contract. Plaintiff was never able to serve a summons on defendant Ray Ingalls. A bench trial was held before the Honorable Joseph B. Gary in Gallatin County and he concluded that the remaining four named defendants were indebted to plaintiff Springer in the amount of $17,392.70 together with interest thereon at the rate of 10% per annum from December 1979. We affirm, but remand for the correction of the percentage rate on the award of prejudgment interest.

The plaintiff architect, Lowell Springer, entered an oral contract to design certain restaurants for an entity consisting of the five named defendants. Springer was paid only $1,000 for his services and he filed suit to recover the remainder. The major issue of this case involves the nature of the entity consisting of the five defendants. Springer contends he contracted with a partnership, thus making the individual defendants liable. The defendants-appellants contend that Springer contracted with a corporation, thus making the corporation liable on the contract but not each individual defendant.

On June 20, 1978, the five named defendants entered a partnership agreement. The partnership was named "Crosswinds Enterprises." Article 1.4 of the agreement stated the business of the partnership was to own and operate "one or more restaurants and any other business related thereto, and such other business as the partners shall determine." The agreement gave defendant Harry Opsahl the general authority to operate and manage the initial restaurant venture.

2

Additionally, Article 4.1 stated the partnership agreement would govern the rights, duties, and obligations of Opsahl until an employment contract was entered between Opsahl and the partnership. In July of 1978 the partnership Crosswinds Enterprises acquired property in Dillon, Montana, for the purpose of developing a restaurant.

On March 1, 1979, the partners signed an addendum altering certain portions of the original partnership agreement. The name of the partnership was changed from "Crosswinds Enterprises" to "Carousel Properties." The addendum altered the manner in which the agreement governed Opsahl's duties as operator-manager by providing that such duties would be governed solely by a separate contract of employment and that the provisions of the partnership agreement related only to his status as a partner. An employment contract between Opsahl and the partnership Carousel Properties was never entered. The addendum also provided that unless written consent was obtained from the partnership, all partners were prohibited from: (1) borrowing money in the name of the partnership or lending money belonging to the partnership; and (2) making any purchase in the partnership name or for which the partnership could be liable.

On March 30, 1979, the partnership registered and certified the trade name Carousel Properties with the Secretary of State. However, the registration document itself does not appear to indicate that the name "Carousel Properties" was specifically intended to replace the name "Crosswinds Enterprises" for that particular partnership. On that same date, the five named defendants formed a new corporation and incorporated under the name "Crosswinds Enterprises." The corporate name is somewhat confusing since it is the former name of the partnership Carousel Properties.

3

According to appellants, the partnership Carousel Properties made an assignment of all right, title, and interest in the name "Crosswinds Enterprises" to the newly formed corporation, Crosswinds Enterprises. The assignment was alleged to occur on the same day of incorporation, but the specific mechanics are somewhat blurry since defendants did not demonstrate the assignment with any written documentation other than the document registering and certifying the trade name Carousel Properties.

After the incorporation of Crosswinds Enterprises, the status of the business entities under the control of the five named defendants consisted of: (1) a partnership, Carousel Properties, with the five named defendants as partners; and (2) a corporation, Crosswinds Enterprises, with the five named defendants as shareholders. Defendant Opsahl entered an employment contract with the corporation, Crosswinds Enterprises, on June 1, 1979.

On July 25, 1979, defendant Ray Ingalls contacted Springer and asked him to develop certain building designs for restaurants. A written contract was never entered. Springer testified that Ingalls indicated he would be paid according to the number of restaurants and the size of the restaurants. Two "prototypes" were envisioned: a 3,800 square foot restaurant design and a smaller 3,400 square foot restaurant design. Springer testified he was to receive $4,500 for each smaller prototype and $7,500 for each larger prototype. Springer testified that Ingalls estimated that as many as 42 restaurants would eventually be built. Springer testified that Ingalls referred to his other business associates as his "partners," but did not specifically state he represented a partnership or a corporation.

Springer indicated his acceptance of the offer and was sent a retainer check for $1,000 drawn on the account of

4

"Crosswinds of Dillon." The check gives no specific indication that the entity is a partnership or a corporation. The check was signed by defendants Alan Hart and Ray Ingalls. Plans developed by Springer were used to construct three Wyoming restaurants and few changes were implemented. In November 1979, Opsahl discharged Springer and informed him his services were inadequate. On August 28, 1980, Springer received a letter from Alan Hart stating his work was unsatisfactory and no further payment was intended. Springer has never received further payment.

On July 14, 1981, Springer filed suit against the corporation, Crosswinds Enterprises, to recover his fees. On February 18, 1982, Crosswinds Enterprises filed for bankruptcy. Due to the automatic stay required by 11 U.S.C. 362(a), the lawsuit proceedings came to a halt. On October 19, 1984, Springer filed this lawsuit against the five named defendants on the theory that he contracted with them as a partnership.

The cause proceeded to a bench trial and Judge Joseph B. Gary found in favor of plaintiff Springer. Findings of fact and conclusions of law with a supporting memorandum were issued on September 19, 1986. The conclusions of law state that Springer entered an oral contract with a partnership, consisting of the five named defendants as partners, in which Springer was to design and supervise the construction of 42 restaurants. It was also concluded that three restaurants were constructed utilizing Springer's plans and that defendants were indebted to Springer in the amount of $17,392.70 ($16,500 in contract damages plus $1,892.70 in actual expenses minus $1,000 received as a retainer fee) together with interest thereon at the rate of 10% per annum from December 1979. Ingalls was never served with a summons

and therefore judgment was not rendered against him. Defendants appeal from this judgment.

Five issues are presented for our review on appeal:

1. May the plaintiff recover from the individual defendants by alleging he contracted with a partnership and not a corporation?

2. Should plaintiff Springer be estopped from alleging he contracted with a partnership when he has previously dealt with that entity as a corporation?

3. Did the trial court commit error by making findings that were not supported by the evidence?

4. Did the trial court commit error by admitting inadmissible evidence?

5. Was the rate of prejudgment interest properly entered?

Before reviewing each individual issue, we must note the applicable scope and standard of review. The District Court's findings of fact will not be reversed unless clearly erroneous. Rule 52(a), M.R.Civ.P. Findings are not clearly erroneous if supported by substantial credible evidence. Additionally, the following statement applies to the standard of review to be exercised in this case:

> In a nonjury trial, the credibility of witnesses and the weight of their testimony are matters for the District Court to determine. The sufficiency of the evidence must be reviewed from the perspective most favorable to the prevailing party. The District Court's findings and judgment are presumed correct and will not be overturned unless the appellant meets the burden of proving with a preponderance of evidence that they are wrong. Merely showing the evidence establishes reasonable grounds for reaching a different conclusion is insufficient to reverse the District Court findings.

Frank L. Pirtz Const. v. Hardin Town Pump (Mont. 1984), 692 P.2d 460, 462, 41 St.Rep. 2366, 2368.

> I.  May the plaintiff recover from the individual defendants by alleging he contracted with a partnership and not a corporation?

Springer contends he contracted with a partnership entity and that the individual defendants are therefore liable.  The defendants contend that Springer contracted with a corporation, thus making the corporation liable on the contract and not each individual defendant.  The District Court concluded Springer contracted with a partnership by stating:

> That in the month of July, 1979, the Plaintiff and the partnership consisting of Harry M. Opsahl, Ray N. Ingalls, Walter W. Deines, Alan M. Hart and Carroll M. Hart, entered into an oral agreement whereby the services of the Plaintiff architect were to be obtained for the purpose of designing and supervising the construction of forty-two (42) restaurants.

Defendants attack this issue in several different ways. First, defendants contend the corporation, Crosswinds Enterprises, should not be held to consist of an actual partnership.  The contention is that no actual partnership named Crosswinds Enterprises existed between the defendants at any time during the relationship between Crosswinds Enterprises and Springer.  Defendants state that by the time Springer and Ingalls entered the oral agreement the entity known as Crosswinds Enterprises was incorporated and properly assumed its name which was formerly held by the partnership Carousel Properties.  They argue that the partnership Crosswinds Enterprises ceased to exist by that name when the

7

addendum was entered on March 1, 1979 changing the partnership name and restricting each partner's authority. Second, defendants contend that Crosswinds Enterprises should not be held to consist of a partnership by estoppel because there is insufficient evidence demonstrating the entity was held out as a partnership and Springer did not rely on any such representations.

Third, defendants contend that the individual defendants should not be held liable by virtue of their partnership status in Carousel Properties. Defendants point out that all of Springer's dealings were with the entity Crosswinds Enterprises, and that all of Springer's pleadings and allegations have been against Crosswinds Enterprises. Also, defendants state Opsahl had no authority to bind the partnership Carousel Properties. According to the partnership agreement and the addendum filed on March 1, 1979, he had no actual authority to bind the partnership without the approval of the other partners. Finally, defendants allege that if any liability does result, it should extend to only Opsahl because he did not disclose the identity of his principal to Springer.

In sum, defendants' tactic is to systematically rebut each possible theory resulting in the conclusion that Springer contracted with a partnership. However, we find that the substance of the transaction is that Springer entered an oral contract with a partnership. Defendants contend this conclusion is incorrect since the partnership Crosswinds Enterprises no longer existed and the partnership Carousel Properties was unknown to Springer. However, we refuse to follow this reasoning and place form over substance.

More specifically, we believe the facts demonstrate a partnership by estoppel. Partnership by estoppel has two

8

basic elements requiring: (1) that a person or entity represent to a third party that he is dealing with a partnership, even though no such partnership exists; and (2) that the third party rely to his detriment. See, Gamble Robinson Co. v. Carousel Properties (Mont. 1984), 688 P.2d 283, 288, 41 St.Rep. 1757, 1762 (a case involving these same five defendants in which this Court reversed a summary judgment which found partnership liability). Partnership by estoppel is controlled by § 35-10-308, MCA, which states in part:

> (1) When a person by words spoken or written or by conduct represents himself or consents to another representing him to anyone as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made. When a partnership liability results, he is liable as though he were an actual member of the partnership. When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

At the time the contract was negotiated and entered, Ray Ingalls did not specifically state he represented either a partnership or a corporation. However, Springer testified that Ingalls did refer to the other individuals involved as his "partners." This representation could lead a reasonable

person to believe he was dealing with a partnership. After the contract was entered, Springer received a retainer check drawn on the account "Crosswinds of Dillon." The check fails to classify the business entity and it would not have been unreasonable for Springer to continue to believe he contracted with a partnership. The defendants do not contend that there was a corporation organized under that name and the retainer check failed to notify Springer he was dealing with a corporation. Regardless of their intentions the record clearly indicates that they would have benefitted financially by having the plaintiff perform the contracted work.

A similar issue was presented to the Supreme Court of Wisconsin in Phillip Lithographing Co. v. Babich (Wis. 1965), 135 N.W.2d 343. In determining whether certain partners were individually liable on a contract, the court stated:

> The general rule is that partners who continue to hold themselves out as such after the formation of a corporation cannot escape responsibility for contracts entered into after the change in business status without adequate notice that the partnership has been dissolved. This is especially true when the corporation operates under the same name and circumstances as the partnership.

Id. at 344. Admittedly, the Wisconsin Court was faced with slightly different facts in that the complaining party had dealt with the business entity in question both before and after incorporation. Here, Springer contracted with the defendants only after the incorporation. However, we believe the situations are sufficiently analogous for the above general rule to have a persuasive effect.

Defendant Harry Opsahl testified he believed Springer worked for the partnership entity. Ray Ingalls referred to

the other individuals involved as his "partners." The retainer check drawn on the account of "Crosswinds of Dillon" did not notify Springer he contracted with a partnership, and a search for this particular corporate name with the Secretary of State still would not have notified Springer. Sufficient evidence exists to find that the entity was held out as a partnership. Additionally, Springer's subsequent efforts and work demonstrate he relied on this "holding out" to his detriment. Although the District Court simply found Springer contracted with a partnership and did not specifically conclude there was a partnership by estoppel, the effect of the District Court's conclusion is the same. We therefore agree with the result of the District Court's conclusion and will not reverse on this issue.

> II. Should plaintiff Springer be estopped from alleging he contracted with a partnership when he has previously dealt with that entity as a corporation?

Defendants assert Springer has previously treated the entity Crosswinds Enterprises as a corporation and therefore he should now be estopped from claiming it is a partnership. On July 14, 1981, Springer attempted to recover his fees by filing a lawsuit against "Crosswinds Enterprises, A Montana Corporation." Springer obviously addresses Crosswinds Enterprises as a corporation throughout the complaint. Defendants contend Springer could not later elect to sue the individual defendants on the theory they acted as partners. Defendants also point out that on January 28, 1982, Springer signed an affidavit in support of a petition for a prejudgment writ of attachment and referred to Crosswinds Enterprises as a corporation.

11

Defendants' argument is based primarily upon Sun River Stock and Land Co. v. Montana Trust and Savings Bank (1928), 81 Mont. 222, 262 P. 1039. In that case, this Court stated that one who recognizes an entity as a corporation by dealing with it as such is prohibited from later holding the members of the corporation as partners. Sun River Stock and Land Co., 262 P. at 1045. However, the facts of the present case are distinguishable. Sun River Stock and Land Co. involved individuals attempting to assert that a corporation was actually a partnership, after these same individuals clearly recognized and treated the entity as a corporation throughout their entire dealings. As a stockholder and director, one of the plaintiffs, Charles Power, was substantially involved in the incorporation and subsequent operation of the entity as a corporation. In contrast, Springer did not clearly address Crosswinds Enterprises as a corporation until he attempted to recover his fees by filing a complaint in July of 1981. The contract was formed approximately two years earlier and Springer's services were terminated in November of 1979. Until the time Springer filed suit against Crosswinds Enterprises, one could not characterize Springer as having treated that entity as a corporation. The sole exception to this was when Springer's office addressed an inspection report to "Crosswinds Enterprises, Inc." on September 17, 1979. Despite many contacts between Springer and Crosswinds Enterprises, including at least nine bill demands, defendants are only able to point out this one occasion where the entity is specifically designated with the abbreviation "Inc." Springer did not address Crosswinds Enterprises as a corporate entity until he attempted to recover his fees by filing suit against the corporation. This subsequent attempt to recover his fees will not be interpreted so as to estop

Springer from alleging he originally contracted with a partnership.

There is an additional reason why we find Springer is not estopped from his claim. Essentially, defendants contend that under these facts Crosswinds Enterprises is a corporation by estoppel. The theory of corporation by estoppel has heavy roots in equity. The basic rationale for the theory is that it is usually inequitable to allow a party to deny that an entity is a corporation after he has already dealt with it as a corporation. See, 8 Fletcher Cyclopedia Corporations § 3912 (1982). Under the facts presented however, the opposite is true. It is undisputed that Springer received only $1,000 in compensation. The District Court found that despite his termination, Springer's plans were utilized to build three restaurants. Evidence heard at trial indicated that a reasonable architect's fee would be much higher than what Springer demanded. The $1,000 retainer fee constituted only a small fraction of a reasonable fee. Equity and fairness dictate that Springer should not be estopped from contending he contracted with a partnership.

III. Did the trial court commit error by making findings that were not supported by the evidence?

Defendants contend the trial court erroneously determined the timing of the name change of the partnership from Crosswinds Enterprises to Carousel Properties. Defendants focus on finding of fact number 22 and contend it indicates the name change occurred after the contract was entered with Springer. We agree that the evidence demonstrates that the name change occurred before the agreement was entered. However, in light of the previous

13

portion of this opinion, we find that this constitutes harmless error.

Defendants also state finding of fact number 22 is erroneous in that it states defendants Opsahl and Ingalls represented that the restaurants were to be owned by the partnership and that the restaurant owners were substantial investors with capabilities of constructing 42 restaurants. The record demonstrates that Ingalls indicated the entity which he represented was comprised of other individuals which he referred to as his "partners." Further, at the time Springer was informed that as many as 42 restaurants were planned, it was impliedly represented that the individuals involved were "substantial" investors. We refuse to find that these findings are clearly erroneous.

### IV. Did the trial court commit error by admitting inadmissible evidence?

Defendants assert the trial judge heard three items of evidence that should have been ruled inadmissible. First, defendant Opsahl was allowed to testify that Springer worked for the partnership and not the corporation. Error is alleged because Opsahl also testified he knew little about the contract with Springer as well as the addendum to the partnership agreement. Defendants claim Opsahl should not have been allowed to give his opinion as to the ultimate issue of the trial when he admitted he knew little about the contract itself. A lay witness may give testimony in the form of an opinion if the testimony is "rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue." Rule 701, M.R.Evid. Opsahl was substantially involved with the affairs of the business and his statements were rationally based on his own perceptions. Further, his

14

statements were helpful to the determination of a fact in issue. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, M.R.Evid. Opsahl's testimony that he knew little about Springer's contract and the addendum to the partnership agreement goes to the weight of his testimony and not the admissibility. Therefore, the statements by Opsahl were admissible

Second, defendants claim a deed to property located in Dillon, Montana, was improperly admitted into evidence since title to the property was irrelevant. The deed was for the property acquired by the former partnership, Crosswinds Enterprises, to develop their first restaurant. Defendants contend the trial court erroneously used the deed to conclude that the partnership owned all of the restaurant facilities operated as Crosswinds restaurants. Even if it is assumed that the deed was irrelevant and should not have been admitted, defendants fail to adequately demonstrate that the District Court would have arrived at a different decision. Therefore, the admission of the deed was no more than harmless error.

Finally, defendants assert that certain character evidence was improperly admitted. Counsel for Springer demonstrated that prior to the bankruptcy, the former Crosswinds restaurant in Dillon was transferred to a corporation controlled by defendant Alan Hart's mother. Defendants claim this was irrelevant character evidence which tended to imply a fraudulent transfer and resulted in prejudice. However, defendants fail to demonstrate the conclusions of the court would have been different if the allegedly inadmissible character evidence had not been admitted. Defendants state that evidence of the prejudicial

effect can be seen in the District Court memorandum where it is stated,

> There was a considerable number of hours spent by the respective architects at a very reasonable fee which was much less than the accountant [defendant] Mr. Hart charged at the time.

In view of the evidence presented in the transcript, we agree with this statement by the District Court. Further, we find no indication that the statements by Springer's counsel necessarily tainted the trial judge's decision.

### V. Was the rate of prejudgment interest properly entered?

The District Court awarded interest on the amount of the judgment at the rate of 10% per annum from December 1979. Defendants state the legal rate of interest should be governed by § 31-1-106, MCA (1979), as that law appeared at the time of the Springer-Crosswinds Enterprise dealings. The rate of interest provided at that time was 6%. In 1985, the legislature amended the statute and provided for an interest rate of 10%. 1985 Mont. Laws 263. Defendants contend that if any portion of the trial court judgment is affirmed, the interest on that judgment amount should be only 6% per annum from November 1979 until judgment was entered.

We find the newly provided interest rate should be applied as of the date the law became effective. The session law, 1985 Mont. Laws 263, indicates no effective date. Section 1-2-201, MCA, indicates an effective date of October 1, 1985 unless the legislation provides otherwise or is an appropriation of public funds for a public purpose. Therefore, we hold the applicable interest rate is 6% until October 1, 1985, and 10% thereafter. See, Byrne v. Terry (Mont. 1987), ____ P.2d ____, 44 St.Rep. 1620, 1624.

16

We remand to the District Court for the correction of the percentage rate on the award of prejudgment interest. For the foregoing reasons, the District Court's decision is affirmed on all of the remaining issues.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

17